**LUIS S. LLANOS, SR., in his capacity as Commissioner of Labor, Government of the Virgin Islands, Plaintiff**

v.

**DAVIS BEACH COMPANY, A U.S. VIRGIN ISLANDS GENERAL PARTNERSHIP COMPRISED OF FAIRFIELD VIRGIN ISLANDS, INC. (A DELAWARE CORPORATION REGISTERED TO DO BUSINESS IN THE V.I.) AND BODKIN DEVELOPMENT CORPORATION, AS GENERAL PARTNERS AND INDIVIDUALLY AND GEORGE H. JACOBUS AS PRESIDENT OF BODKIN'S DEVELOPMENT CORPORATION, Defendants**

Dist. Ct. No. 1991/186

District Court of the Virgin Islands

Div. of St. Croix

August 26, 1991

ROSALIE SIMMONDS-BALLENTINE, Attorney General, By: VICTOR G. SCHNEIDER, ESQ., Assistant Attorney General (Department of Justice), St. Thomas, V.I., *for plaintiff*

WINSTON A. HODGE, ESQ. (LAW OFFICE OF HODGE & SHEEN, P.C.), St. Croix, V.I., *for defendants*

BROTMAN, *Acting Chief Judge, Sitting by Designation*

## OPINION

Before the court is plaintiff's application for a preliminary injunction pursuant to 24 V.I.C. § 471 et seq. and Fed. R. Civ. P. 65. In addition, defendant George S. Jacobus moves to dismiss the complaint against him.

## I. FACTS AND PROCEDURE

Plaintiff is the Commissioner of Labor in the Virgin Islands. On July 1, 1991, he commenced the instant action for a declaratory judgment, permanent, preliminary, and temporary injunctions, and damages. Plaintiff contends that defendants violated the Plant Closing law of the Virgin Islands, codified at 24 V.I.C. § 471 et seq. (the "Act"), by closing a full service hotel in St. Croix called Carambola Beach Resort and Club ("Carambola" or "the hotel") without providing ninety days advance notice to the employees and to him. On or about June 14, 1991, approximately 206 employees who worked at Carambola were terminated, and the hotel was closed.

Defendant Davis Beach Company is a United States Virgin Islands general partnership comprised of defendant Fairfield Virgin Islands, Inc. and defendant Bodkin Development Corporation. Davis Beach Company is the record owner of Carambola. The property upon which the hotel is constructed is subject to a mortgage held by AIG Life Insurance Company, American International Life Assurance Company of New York, The Canada Life Assurance Company, Canada Life Insurance Company of America, Crown Life Insurance Company, and Kawaski Leasing International, Inc. ("the lenders"). The only asset of Davis Beach Company is the hotel, subject to the mortgage which exceeds the value of hotel. Defendant George H. Jacobus is President of Bodkin Development Corporation.

Carambola suffered substantial damage during Hurricane Hugo and was closed for business after the natural disaster. Reconstruction was commenced, and the hotel was prepared for reopening.

On or about September 26, 1990, Davis Beach Company informed the lenders that it did not have the funds necessary to reopen the hotel and left it to the lenders to determine whether it would continue to fund the hotel. The lenders then advanced funds to the management company, The Greenbrier Resort Management Company ("The Greenbrier"), to continue operation of the hotel. Carambola reopened on October 10, 1990 under the management of The Greenbrier funded by the lenders.

On June 13, 1991, S. Lee Bowden, the resident manager of Carambola who was employed by The Greenbrier, informed the employees at Carambola that as of 5:00 p.m. on June 14, 1991, the hotel would be closed and their employment would be terminated. On June 14, 1991, 206 of the employees were terminated, and 45 were retained to work on the farm and the golf course. It is without dispute Carambola is a

369

facility as defined in § 471(5) of the Plant Closing Act and that the employees and the Commissioner of Labor were not given 90 days advance notification of the closing as required by § 472 of the Act.

On June 14, 1991, the mortgagees under two mortgages between Davis Beach Company, as mortgagor, and mortgagees, commenced an action in the District Court of the Virgin Islands, Division of St. Croix, captioned AIG Life Insurance Company, et al v. Fairfield Virgin Islands, Inc., et al., Civil No. 160/1991, seeking foreclosure of the mortgage and appointment of a receiver for Carambola. On June 17, 1991, this court appointed a receiver for the hotel. Paragraph 2 of the order in which the court appointed the receiver provides that the receiver has complete and exclusive possession of Carambola. The court subsequently issued a permanent order appointing a receiver on July 5, 1991.

On July 2, 1991, defendants served notice of the plant closing on the Commissioner of Labor.

Plaintiff seeks to restrain defendants from violating 24 V.I.C. § 471 et seq. (the "Act"). Specifically, he seeks an injunction to prevent defendants from closing Carambola, requiring the immediate reinstatement of all affected employees pending the outcome of the hearing on a permanent injunction, enjoining defendants from closing Carambola without ninety days advance notice, requiring defendants to provide severance pay to the affected employees, requiring defendants to give the affected employees a permanent preference in hiring, and enforcing the employees' right of first refusal and the Government's option to purchase the facility. Plaintiff contends that the closing of Carambola has caused the Government of the Virgin Islands an undue burden as the affected employees are seeking unemployment insurance benefits and has burdened the Department of Labor's reemployment and training resources.

The court heard argument on the application for a temporary restraining order on July 1, 1991. Defendants received notification of the hearing and appeared. In an order dated July 9, 1991, the court denied the motion for a temporary restraining order as there was no immediate, irreparable harm as the termination of the affected employees had already occurred. The court set this matter down for a hearing on July 18, 1991 on the preliminary injunction.

The court heard testimony on the application for a preliminary injunction on July 18, 1991. The Commissioner of Labor, Luis S. Llanos, Sr., Mrs. Jeanne Blackwood, an adjudicator of Virgin Islands

Unemployment Insurance, and Mr. Alric Batiste, Chief of Tax, testified as witnesses for plaintiff. Mr. Leon Teske, C.P.A., and Mr. S. Lee Bowden, resident manager at Carambola for The Greenbrier Resort Management Company testified as defense witnesses. Teske testified that Fairfield Virgin Islands, Inc. would be in bankruptcy other than the request of the lenders that it not go into bankruptcy in order to not unnecessarily encumber the title to Carambola. In addition, he testified that the investment in excess of $1.5 million noted in the 1990 Annual Report of Bodkin Development Corporation was no longer an asset of the corporation as it had been converted to the credit of the lenders in April of 1991. The court reserved decision on the motion for the preliminary injunction at the close of the hearing.

Defendant George H. Jacobus has since moved to dismiss the complaint against him, contending that he is not an employer under the Act. As resolution of this motion in favor of Jacobus would narrow the court's inquiry on plaintiff's application for a preliminary injunction, the court will first consider the motion to dismiss.

## II. MOTION TO DISMISS

Upon its face, the Plant Closing Act prohibits certain conduct by an "employer." The Act defines an employer as "an individual, corporation, or other private business entity, whether for profit or not for profit, which owns or operates a facility, at least one year . . ." 24 V.I.C. § 471(4). There is no dispute that Carambola is a facility as defined in § 471(5) of the Act. Defendant George H. Jacobus moves to dismiss the complaint against him, contending that he is not an employer as defined under the Act. If Jacobus does not fall within the definition of employer, then the complaint against him must be dismissed for the failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

■■ When considering a motion to dismiss, the court must accept as true the well-pleaded allegations in the complaint. Miree v. DeKalb County, 433 U.S. 25, 27 n.2 (1977); Craftmatic Securities Litigation v. Kraftsow, 890 F.2d 628, 634 (3d Cir. 1989). All reasonable inferences must be drawn in plaintiff's favor. See McKnight v. Southeastern Pa. Transp. Auth., 583 F.2d 1229, 1235–36 (3d Cir. 1978). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45–46 (1957).

■ In his complaint, plaintiff describes the parties to this action:

The plaintiff is the commissioner of the Department of Labor, an Agency within the Government of the Virgin Islands, with the responsibility and authority to administer and enforce the Virgin Islands labor laws.

The defendant Davis Beach Company is a general partnership comprised of Fairfield Virgin Islands, Inc., and Bodkin Development Corporation, engaged in the business of construction, ownership and operation of a full service hotel in St. Croix, Virgin Islands and is subject to the in personam jurisdiction of this Court, and amenable to service of process.

Complaint at ¶¶ 5–6. Plaintiff does not describe who Jacobus is other than in the caption of the case where plaintiff names Jacobus as "President of Bodkin Development Corporation" nor does he indicate why Jacobus fits within the statutory definition of employer under the Act. Plaintiff's broad allegations that "defendants" engaged in certain conduct such as obtaining a Virgin Islands Development certificate, constructing and operating Carambola, and unlawfully closing the hotel and terminating the hotel's employees, Complaint at ¶¶ 7–8, 10, do not sufficiently allege that Jacobus owned or operated Carambola. For example, the Virgin Islands Development certificate attached to plaintiff's complaint as Exhibit 2 indicates that it was issued to Davis Beach Company, not to any other individual or entity. The court concludes that the face of the complaint does not sufficiently allege facts from which it could be inferred that Jacobus was an employer at Carambola as that term is defined in 24 V.I.C. § 471(4). As a result, the complaint against defendant Jacobus will be dismissed.

It should be noted that in opposition to Jacobus' motion, plaintiff referred to numerous documents and the testimony of witnesses at the preliminary injunction hearing in support of his contention that Jacobus was an owner and operator of Carambola. The court's dismissal of the complaint against Jacobus at this time does not preclude plaintiff from moving to amend his complaint at a later date if he believes he can allege facts sufficient for the court to infer that Jacobus is an employer at Carambola as the term employer is defined in the Act.

## III. MOTION FOR A PRELIMINARY INJUNCTION

■ The issuance or denial of a preliminary injunction is a matter committed to the sound discretion of the trial court. Penn Gal-

vanizing Co. v. Lukens Steel Co., 468 F.2d 1021, 1023 (3d Cir. 1972). In order to issue a preliminary injunction, the court must be satisfied that:

(1) the party moving for the injunctive relief will suffer irreparable harm if injunctive relief is not forthcoming;

(2) there is a probability of ultimate success on the merits;

(3) the harm likely to be inflicted upon the moving party outweighs any harm that is likely to be suffered by the non-moving party if said injunctive relief is not awarded;

(4) the grant of the requested relief will not negatively impact upon the public interest.

See Continental Group Inc. v. Amoco Chem. Corp., 614 F.2d 351, 356–57 (3d Cir. 1980); see also Hoxworth v. Blinder, Robinson & Co. Inc., 903 F.2d 186, 197–98 (3d Cir. 1990); SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985); Klitzman, Klitzman and Gallagher v. Krut, 744 F.2d 955, 958–59 (3d Cir. 1984). The court must balance each of these four factors when determining whether or not to issue the injunction. Spartacus, Inc. v. Borough of McKees Rocks, 694 F.2d 947, 949 (3d Cir. 1982). Plaintiff must demonstrate irreparable injury and a reasonable probability of success on the merits before an injunction may issue. Morton v. Beyer, 822 F.2d 364, 367 (3d Cir. 1987). It must be recalled that "(t)he purpose of the preliminary injunction is to preserve the status quo between the parties pending a final determination of the merits of the action." J. Moore, 7—Pt.2 Moore's Federal Practice ¶ 65.04 (1990).

In the instant case, the Commissioner moves for a preliminary injunction to restrain violations of the Plant Closing Act codified at Title 24, §§ 471 et seq. The Act provides in relevant part:

§ 472. Advance notification.

Every employer who is closing a facility shall at least 90 days prior to the plant closing give advance notification to the Commissioner [of the Department of Labor], any affected employees, and if the employees are represented by a labor union to such union.

§ 473. Severance pay.

Within one pay period after termination the employer shall pay every affected employee a severance payment equal to one week's pay for every year of service with the employer. The severance payment shall be calculated at the average annual wage

during the year prior to the termination. This section shall not apply to employees with less than a year's service or to employees covered by an express contract providing for severance pay.

§ 474. Preference in hiring.

Employees affected by a plant closing shall be accorded permanent preference in hiring and employment at other work places of the employer. Any employee who is so rehired or employed shall be accorded seniority as determined on the date of termination of employment.

§ 475. Right to purchase facility.

Employees affected by a plant closing shall have the right of first refusal to purchase an affected facility within 90 days of the employer's notice to close the facility as provided by section 472 of this chapter. Any employee who is so rehired or employed shall be accorded seniority as determined on the date of termination of employment.

§ 476. Penalties.

Any employer who willfully violates any provision of this chapter or any rule or regulation issued pursuant thereto shall be guilty of a misdemeanor and shall be subject to a fine of not less than $100 for every affected employee.

§ 477. Injunctions.

In addition to any other penalties prescribed by law, the Attorney General may bring action in any court in the Virgin Islands to restrain violations of this chapter.

Certain terms are defined in § 471 of the Act, among them:

(4) "Employer" means an individual, corporation, or other private business entity, whether for profit, or not for profit, which owns or operates a facility, at least one year;

(5) "Facility" means a plant, factory, commercial business, institution or other place of employment located in the Virgin Islands; which had 10 or more employees during any month in the last six month period prior to the date of plant closing;

(6) "Plant closing" means a permanent cessation or reduction of business at a facility which results or will result as determined by the Commissioner in the permanent separation of at least 50 percent of the employees of said facility within a period of six months prior to the date of actual or anticipated termination of

business or within such other period as the Commissioner shall prescribe provided that such period shall fall within the six month period prior to the date of actual or anticipated termination of business. Plant closings shall not include facilities which are closed under the provision of the Federal Bankruptcy Act, 11 USC 101 et seq., except for employers in reorganization proceedings and facilities closed due to a physical calamity or natural disaster.

The court will now turn to consideration of the application for a preliminary injunction.

## A. *Standing*

The court asked the parties to brief the issue of the Commissioner of Labor's standing to sue under the Act. Plaintiff contends that he has standing as the Government of the Virgin Islands through its Attorney General is specifically authorized to bring action to restrain violations of the Act pursuant to 24 V.I.C. § 477.[1] Defendants argue that neither the Virgin Islands Code generally (which outlines the Commissioner of Labor's powers and duties at 24 V.I.C. § 5) nor the Act itself gives the Commissioner of Labor standing to sue, pointing to the specific language of the Act that an action to restrain violations of the Act be brought by the Attorney General.

While plaintiff is not the Attorney General, he is the Commissioner of Labor and is represented by the Attorney General in this action. That the legislature determined that the Commissioner of Labor has a substantial interest in preventing violations of the Plant Closing Act can be gleaned by the statute itself where the legislature expressly provided that the notice of any plant closing be given to the Commissioner of Labor, 24 V.I.C. § 472, and gave the Commissioner the power to adopt rules and regulations pursuant to the Act, 24 V.I.C. § 478. It seems to be an overly technical construction of the Act to dismiss the complaint of the Commissioner of Labor only to have the Attorney General file a similar complaint seeking restraint of the alleged violations of the Act. Therefore, the court finds that the Commissioner of Labor does have standing to bring an action to restrain violations of the Act.[2]

---

[1] As noted above, § 477 provides that "... the Attorney General may bring action in any court in the Virgin Islands to restrain violations of this chapter."

[2] The court does not reach the issue of whether the Commissioner of Labor has standing to bring an action for damages under the Act as it is unnecessary to

### B. *Whether Defendants Are "Employers" Under the Act*

Under the Act, an "employer" is required to provide advance notification of a closing, pay severance pay, and provide affected employees with a permanent preference in hiring and employment at other work places of the employer. The term "employer" is defined, as previously noted, as "an individual, corporation, or other private business entity whether for profit or not for profit, which owns or operates a facility, at least one year." 24 V.I.C. § 471(4). The Commissioner seeks to enjoin Davis Beach Company and its general partners Fairfield Virgin Islands, Inc. and Bodkin Development Corporation from violations of the Act, charging each of them with equal responsibility as owners of Carambola.

Davis Beach Company argues that it does not fall within the definition of employer within § 471(4) of the Act as it allegedly has not owned or operated Carambola since September of 1990. Davis Beach Company admits that it retains the legal title to Carambola; however, it contends that it surrendered the actual rights, dominion and control to the property to the lenders in late 1990. It posits that this relinquishment of control over Carambola removes it from the statutory definition of employer under the Act.

■ Accepting Davis Beach Company's contentions as true, that it turned over control of Carambola to the lenders in late 1990, the court must reject Davis Beach Company's argument that it does not "own or operate" Carambola. Legal title to Carambola remains with Davis Beach Company until such a time as the lenders prevail in their foreclosure action. Hence, until title is transferred, the court finds that Davis Beach "owns" Carambola, rendering it an "employer" under § 471(4) of the Act. Because Davis Beach Company is organized as a general partnership comprised of Fairfield Virgin Islands, Inc. and Bodkin Development Corporation, the court must find that those two entities also own Carambola, rendering them "employers" under the act. Title 26 V.I.C. § 1 et seq. (Partnerships).

### C. *Irreparable Harm and Likelihood of Success on the Merits*

Before the court enters a preliminary injunction, it must be convinced that plaintiff is likely to suffer irreparable harm without issuance of the injunction and is likely to succeed on the ultimate merits of the case. The Commissioner seeks to restrain defendants from

---

disposition of the motion for a preliminary injunction. For the same reason, the court will not address whether the aggrieved employees have a private right of action under the Act.

violating of the Act. The court must examine each provision of the Act in order to determine whether irreparable injury will occur without restraint of the violation of that provision and whether plaintiff is likely to succeed on the merits.

Section 472 of the Act provides that 90 days advance notification of a plant closing must be given to the Commissioner and to any affected employees.[3] There is no dispute that Carambola closed on June 14, 1991, without 90 days advance notification being given to the Commissioner and to the affected employees. While the Commissioner seeks restraint of the violation of that provision, the court finds that such violation has already occurred, rendering it impossible to enjoin. "The sole function of an action for injunction is to forestall future violations. It is . . . unrelated to punishment or reparations for those past . . ." United States v. Oregon State Medical Soc., 72 S.Ct. 690, 695 (1952). As a result, the court will not enjoin defendants pursuant to § 472 of the Act.

█ Section 473 of the Act provides that "within one pay period after termination the employer shall pay every affected employee [severance pay]." It is undisputed that the severance pay was not given to the affected employees. Under the Act, the obligation to pay severance pay arose within one pay period after termination, a time long since passed. As it did in the case of the advance notification, the court must find that the violation of the Act's severance pay provision has already occurred; hence, the court cannot enjoin such violation.

Section 474 grants a permanent preference in hiring and employment at other work places of the employer to employees affected by a plant closing, and § 475 gives employees affected by a plant closing "the right of first refusal to purchase an affected facility within 90 days of the employer's notice to close the facility." Under § 475, if "the employees do not elect to purchase the facility, the Government of the Virgin Islands shall maintain an option to purchase such facility for a period of 60 days." These provisions differ from those contained in §§ 472 and 473 as they involve a violation of the Act at some point in the future instead of a violation of the Act which has already occurred.

█ Assuming, arguendo, with respect of §§ 472 and 473 that irreparable injury is likely to occur without issuance of the injunc-

---

[3] The Carambola employees were not represented by a labor union, so the statutory requirement that advance notification be given to the union is inapplicable in this case.

377

tion, the court must decline to issue the injunction requested by plaintiff as his likelihood of success on the merits is slight with respect to those portions of the Act. Davis Beach Company's sole asset is Carambola, subject to a mortgage which exceeds the value of the property. The lenders have brought a foreclosure action to recover the property. Fairfield Virgin Islands, Inc. would be in bankruptcy other than the request of the lenders that it not go into bankruptcy in order to not unnecessarily encumber the title to Carambola. The sole substantial asset of Bodkin Development Corporation noted in its 1990 annual report, an investment in excess of $1.5 million, has been converted and sent to the lenders. There are no jobs similar to those held by the Carambola employees at any other work places of Davis Beach Company or Fairfield Virgin Islands, Inc. or Bodkin Development Corporation. Those companies are not viable economic entities. To restrain the companies from failing to give the Carambola employees a permanent preference in hiring and employment at other work places of the employer would be to restrain an impossibility. Similarly, to restrain defendants from violating § 475 of the Act which gives the employees the right of first refusal to purchase Carambola and the government the option to purchase the hotel if the employees do not would also be to restrain an impossibility; the lenders have brought an action to foreclose on the mortgage of Carambola. Given the peculiar facts in this case, the court declines to exercise its discretion to issue a preliminary injunction.

Given the disposition of the application for a preliminary injunction, the court finds it unnecessary to address the constitutional issues raised by defendants at this time. Those arguments may be renewed by defendants at a later stage in this proceeding.

## IV. CONCLUSION

For the above-stated reasons, plaintiff's application for a preliminary injunction will be denied, and the motion of defendant George H. Jacobus will be granted.

An appropriate order will be entered.

## ORDER

This matter having come before the court on plaintiff's application for a preliminary injunction and upon defendant George H. Jacobus' motion to dismiss;

The court having conducted a hearing on the application for a preliminary injunction on July 18, 1991;

Having considered the submissions of the parties, the evidence offered at the hearing, and the arguments of counsel; and

For the reasons stated in the court's opinion of this date;

IT IS on this 26th day of August, 1991, hereby

ORDERED that plaintiff's application for a preliminary injunction is DENIED; and

FURTHER ORDERED that defendant George H. Jacobus' motion to dismiss is GRANTED.

No costs.