Conclusion ........................................... 189

**CLAUDE A. MOLLOY, SR., MARIEL WILLIAM FREDERICKS, ELVIN H. DONOVAN, and ORLANDO BARTHLETT, Plaintiffs,**

**v.**

Civil No. 1994-30

District Court of the Virgin Islands
Div. of St. Thomas and St. John

June 9, 1994

SAMUEL H. HALL, (SAMUEL H. HALL), *for Plaintiffs*

ANTONIO AROCHO-SOTO, (Office of the Attorney General), *for the Government of the Virgin Islands and Rudolph Krigger*

ALAN SMITH, (HODGE & FRANCOIS), *for Government Employees Retirement System of the Government of the Virgin Islands*

FREDERICK G. WATTS, (WATTS, STREIBICH & BENHAM), *for Jureen Todman*

BRENDA J. HOLLAR, (BRENDA J. HOLLAR), *for Dale Bastian*

HENRY L. FEUERZEIG, (DUDLEY, TOPPER & FEUERZEIG), *for Alda Monsanto, Glen Byron and June Adams*

MOORE, *Chief Judge*

## INTRODUCTION

Like many public and private employers, the Government of the Virgin Islands has established a retirement plan for its employees. The original legislation declared that:

> The purpose of such system is to encourage qualified personnel to enter and remain in the service of the Government of the Virgin Islands by establishing an orderly means whereby those who become superannuated or otherwise incapacitated as the result of age or disability, may be retired from service without prejudice and without inflicting a hardship upon the em-

ployees retired, and to enable such employees to accumulate reserves for themselves, their dependents and their beneficiaries, to provide for old age, death, disability and termination of employment, thus promoting economy and efficiency in the administration of government.

V.I. Code Ann. tit. 3, § 701(b) (1967). In accordance with local legislation, the plan is administered by the Government Employees Retirement System of the Government of the Virgin Islands ("GERS," "the Retirement System," or "the System") and a seven-member Board of Trustees ("Board"). See id. § 715(a).

Over time, the realities of administering the GERS evidently have failed to keep pace with the lofty objectives of the System. Approximately one year ago, in June 1993, the GERS hired Claude A. Molloy, Sr. ("Molloy") to serve as the Administrator of the System. In due course, the Legislature of the Virgin Islands confirmed Molloy. However, the Board apparently grew dissatisfied with Molloy's performance and, on November 15, 1993, the Board voted to terminate him.

On March 16, 1994,[1] Molloy instituted the instant action in his capacity as a member of the Retirement System.[2] Joined by three other retirees,[3] Molloy contends that the Government of the Virgin Islands has failed to make, and the GERS and its board members have refused to demand, timely payment of employer and employee contributions, thereby depriving past, present, and future government employees of benefits to which they are entitled under law. Count One alleges that each of the named defendants[4] has

---

[1] Molloy filed an amended complaint on March 21, 1994 and a second amended complaint on March 28, 1994. Unless otherwise noted, all references are to the second amended complaint.

[2] The complaint states in relevant part: "[Molloy] . . . [is] a contributor to and member of the class of persons that are members of the Retirement System, having paid into the Retirement System through payroll deductions for over 20 years." Complaint ¶ 6. The Act defines a member as "any employee included in the membership of the system and participating therein as herein provided." V.I. Code Ann. tit. 3, § 702(f) (1967). The criteria for membership are set forth elsewhere in the Act. See, e.g., id. § 703.

[3] Mariel Fredericks, Elvin Donovan, and Orlando Barthlett joined this lawsuit as plaintiffs on March 28, 1994. They are retired government employees who are presently receiving benefits from the GERS. See Complaint ¶¶ 7–9.

[4] In addition to the Government of the Virgin Islands and the GERS, the complaint

deprived plaintiffs of property without due process of law in violation of the Fourteenth Amendment. Count Two alleges that the Government of the Virgin Islands has taken plaintiffs' property without payment of just compensation in violation of the Fifth Amendment to the Constitution. Count Three alleges that the individual defendants have deprived plaintiffs of property without due process of law in violation of 42 U.S.C. § 1983. Counts Four and Five seek recovery from the GERS and its named board members for breach of fiduciary duty and mismanagement and waste.

Not surprisingly, this litigation has generated a plethora of motions in the relatively short period since its inception.[5] Plaintiffs have asked this Court to issue either a temporary restraining order or a preliminary injunction. They have also made a request for class certification. Finally, plaintiffs have filed a motion to enforce a consent judgment entered by this Court in 1984.[6] The Government of the Virgin Islands and the GERS have each filed motions to dismiss this litigation on the ground that this Court lacks subject matter jurisdiction because plaintiffs have failed to state a claim upon which relief may be granted. The individual defendants have filed motions to dismiss in which they also contend that plaintiffs have failed to state a claim under federal law and that this Court accordingly lacks subject matter jurisdiction.

---

names Alda Monsanto, Jureen Todman, Glen Byron, June Adams, Dale Bastian, and Rudolph Krigger as defendants. Krigger is the treasurer of the GERS by virtue of his position as Commissioner of the Department of Finance of the Government of the Virgin Islands. See V.I. Code Ann. tit. 3, § 716(a) (Supp. 1993) (directing that the Commissioner of Finance shall be the treasurer of the GERS and outlining the treasurer's duties). Monsanto, Todman, Byron, Adams, and Bastian are members of the Board of Trustees of the GERS. By statute, the GERS Board consists of seven individuals. See id. § 715(a). Two of the current members of the Board have not been named as defendants.

[5] Due to the complexity of this matter and the flurry of motions, this Court held argument on March 18 and 25, 1994. In addition, the parties were ordered to submit briefs addressing several of the issues presented in this case.

[6] The consent judgment required the government to remit employee and employer contributions to the GERS within thirty days of each payroll period. Although plaintiffs' motion to enforce was filed in this litigation, it will be considered as having been filed in the litigation that produced the consent judgment. That action is captioned Employees Retirement System v. Quinn, No. 1981–5. Accordingly, the motion will be discussed in a separate order.

167

## I. Plaintiffs' Request for a Temporary Restraining Order or a Preliminary Injunction

As an initial matter, plaintiffs request that this Court issue a temporary restraining order or a preliminary injunction requiring defendants to cease their alleged wrongdoing. Plaintiffs charge that the GERS has failed to demand that the government transfer employer and employee contributions to the GERS in a timely manner even though the GERS has been aware of the government's failure to do so since at least 1981 when it initiated a lawsuit against the government. Plaintiffs further note that the government's failure to remit GERS monies promptly violates the terms of the December 1984 consent judgment.

■ Having determined that the requirements for a temporary restraining order were not satisfied,[7] the Court denied plaintiffs' motion for such extraordinary relief[8] from the bench on March 25, 1994. We likewise decline to issue a preliminary injunction because we do not find that plaintiffs have successfully demonstrated that the requirements for such relief are met in this case. See West Indian Co. v. Government of the Virgin Islands, 643 F. Supp. 869, 873 (D.V.I. 1986), aff'd, 812 F.2d 134 (3d Cir. 1987). In particular, although this Court does not seek to minimize the gravity of plaintiffs' allegations of financial mismanagement, precedent clearly teaches that a preliminary injunction should not be issued in the absence of irreparable harm. Plaintiffs themselves acknowledge that much of the wrongdoing about which they complain began more than a decade ago and this fact alone strongly militates against a finding of irreparable immediate injury. See, e.g., Citibank, N.A. v. Citytrust, 756 F.2d 273, 275–77 (2d Cir. 1985).[9] Accordingly, we will now turn to the remaining motions.

---

[7] In order for a temporary restraining order to issue, the movant must demonstrate that it will suffer irreparable and immediate harm without such an order. See Fed. R. Civ. P. 65(b).

[8] See, e.g., Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989) (stating that the grant of injunctive relief is an "extraordinary remedy") (citation omitted).

[9] As the Second Circuit has explained, "[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985); see also Warner Lambert Co. v. McCrory's Corp., 718 F. Supp. 389, 393 (D.N.J. 1989) (citing Citibank).

## II. Plaintiffs' Motion for Class Certification

Plaintiffs have requested that this Court certify a class consisting of all living past, present, and future employees of the Government of the Virgin Islands who have paid, are paying, or will pay retirement contributions to the GERS and who are or will become members of the System. Plaintiffs must accordingly demonstrate that they fulfill the mandatory requirements of Fed. R. Civ. P. 23(a), see Perez v. Government of the Virgin Islands, 22 V.I. 206, 210 (D.V.I. 1986),[10] and that the criteria set forth in Fed. R. Civ. P. 23(b) are met.[11]

Plaintiffs assert that the requirements described in the Federal Rules are easily met in this case. The class consists of more than 12,000 individuals. In addition, factual issues concerning whether defendants have failed to manage adequately the monies belonging to the GERS and legal issues concerning whether these acts constitute a violation of the plaintiffs' constitutional and common law rights are common to the entire class. Finally, the claims of the named plaintiffs are typical of the claims that could be raised by each member of the proposed class, and the named representatives, particularly Molloy, have first-hand knowledge of the irregularities in the administration of the System and the wrongdoing of the defendants.

Defendants do not challenge plaintiffs' assertions that they satisfy the numerosity, commonality, and typicality requirements of Rule 23(a). However, they argue that Molloy cannot adequately represent that proposed class because his prior role as Administrator of the GERS may render him potentially liable to other members of the proposed class for breach of fiduciary duty claims, his termination from that position by the GERS Board renders him ill-

---

[10] As this Court noted in Perez, an application for class certification cannot be granted unless the proposed class satisfies the following criteria:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Perez v. Government of the Virgin Islands, 22 V.I. 206, 210 (D.V.I. 1986) (quoting Fed. R. Civ. P. 23(a)).

[11] Plaintiffs have sought certification pursuant to subdivision (1) or (2) of Rule 23(b).

suited to serve as a class representative, and his filing of other legal proceedings against these same defendants demonstrates that his interests diverge from those of the members of the class that he seeks to represent.

■ Although defendants have raised weighty concerns regarding the adequacy of representation issue, we do not believe that it is necessary to resolve them or to determine whether the other named plaintiffs could fulfill this requirement.[12] Because plaintiffs primarily seek injunctive relief, a judgment in their favor concerning the administration of the GERS would necessarily enure to the benefit of all members of the proposed class. Other courts have recognized that, under such circumstances, a district court may exercise its discretion to deny class certification. See, e.g., Ray v. United States Department of Justice, 908 F.2d 1549, 1558 (11th Cir. 1990) (remarking that "[c]ertifying a class for the plaintiffs' FOIA claims . . . would serve no purpose because information released . . . under FOIA is equally available to any [other] person who requests it"), rev'd on other grounds, 112 S. Ct. 541 (1991); United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, 493 F.2d 799, 812 (5th Cir. 1974) (declining to find district court's refusal to certify a class to be erroneous because even without class certification, "the requested injunctive and declaratory relief will benefit not only the individual appellants . . . but all other persons subject to the practice under attack").[13] We do not believe

---

[12] Of course, the mere fact that one or more proposed class representatives may have ulterior motives for instituting a civil action does not, standing alone, preclude a finding that the representatives fulfill the Rule 23(a)(4) standard. See First American Corp. v. Foster, 51 F.R.D. 248, 250 (N.D. Ga. 1970) (noting that the Federal Rules direct a court's attention to "the adequacy of representation, and not the motive for such representation"). Further, unsupported references to the possibility that a representative may be liable to other class members has been deemed to be inadequate to bar certification. See Polak v. Noel Indus., Inc., 64 F.R.D. 333, 336 (S.D.N.Y. 1974). If this Court were to determine whether any or all of the named plaintiffs could adequately represent the proposed class, we would be required to consider all of the circumstances of the case. See Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir.), cert. denied, 421 U.S. 1011 (1975).

[13] See also Dionne v. Bouley, 757 F.2d 1344, 1356 (1st Cir. 1985) (concluding that "a court may properly take into account . . . the fact . . . that the same relief can, for all practical purposes, be obtained through an individual injunction without the complications of a class action"); Galvan v. Levine, 490 F.2d 1255, 1261

that the GERS and the members of the Board would comply with a judgment against them, if any, only with regard to the named plaintiffs. Indeed, the very nature of the relief sought herein would preclude such selective compliance. Therefore, although we will exercise our discretion to deny plaintiffs' request for class certification at this time, doing so ought not impede plaintiffs' ability to secure a meaningful judgment in favor of all members of the Retirement System of the Virgin Islands.

## III. Motions of the Government Employees Retirement System, the Board Members, and the Government of the Virgin Islands to Dismiss Plaintiffs' Complaint for Failure to State a Claim

The GERS, the individual members of the Board, and the Government of the Virgin Islands have moved this Court to dismiss plaintiffs' lawsuit on identical grounds. These defendants contend that Counts One, Two and Three of the complaint fail to state a cause of action because plaintiffs are unable to identify a property right that is protected by either the Due Process Clause or the Takings Clause. Defendants further contend that Counts Four and Five of the complaint allege violations of territorial law which cannot be considered pursuant to this Court's supplemental jurisdiction once the federal counts are dismissed. The Court will consider defendants' arguments concerning the three federal counts before analyzing the remaining claims that allege transgressions of territorial and common law precepts.

### A. *Standard of Review*

In determining whether this Court should grant defendants' motions to dismiss for failure to state a claim, see Fed. R. Civ. P. 12(b)(6), we must "accept the factual allegations contained in the

---

(2d Cir. 1973) (stating that "an action seeking declaratory or injunctive relief against state officials . . . is the archetype of one where class action designation is largely a formality"), cert. denied, 417 U.S. 936 (1974); Bailey v. Patterson, 323 F.2d 201, 206 (5th Cir. 1963) (stating that the "nature of the rights appellants seek to vindicate requires that the decree run to the benefit not only of appellants but also for all persons similarly situated"), cert. denied sub nom. Jackson v. Bailey, 376 U.S. 910 (1964); Women's Health Ctr. v. Webster, 670 F. Supp. 845, 852 (E.D. Mo. 1987) ("when declaratory and injunctive relief is sought on behalf of a class, and when the . . . relief sought will benefit all members of a proposed class, a court may exercise its discretion and decline to certify the class").

amended complaint as true and [grant] plaintiff[s] . . . the benefit of all reasonable inferences to be drawn therefrom." City of Philadelphia v. Lead Industries Association, 994 F.2d 112, 118 (3d Cir. 1993). It accordingly follows that this action will not be dismissed "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." Conley v. Gibson, 355 U.S. 41, 45 (1957); see also Llanos v. Davis Beach Co., 26 V.I. 367, 371 (D.V.I. 1991).

B. *Plaintiffs' Allegation that Defendants Have Deprived Them of Property Without Due Process of Law in Violation of the Fourteenth Amendment*

Plaintiffs allege that they have been deprived of their property rights without due process of law in several respects.[14] Specifically, plaintiffs contend that defendants have deprived them of: (1) their right to a basic service retirement or disability annuity; (2) their right to a refund of their accumulated contributions to the Retirement System upon withdrawal from government employment; (3) their right to an annual increase in their basic retirement annuity after the first year of their retirement; (4) their right to supplemental cost-of-living increases based upon the actuarial solvency of the GERS; (5) their right to data concerning the financial condition of the GERS and its assets; (5) their right to retirement benefits derived from the interest and dividend income earned by the contributions made on their behalf; (6) their right to have the Retirement System operate securely without an unfunded liability; and (7) their right to sue derivatively on behalf of the GERS to recover damages representing the economic harm suffered by the GERS as a result of mismanagement by the Board and its treasurer.[15] Defendants do not take issue with plaintiffs' core contention that they have a right to receive certain benefits. However, they strenuously contend that the legally-protected bundle of rights is far narrower than plaintiffs assert and consists only of the right to receive payments on a semi-monthly basis (once a member has retired from government employment) or to demand repayment of accumulated contributions (when a member resigns or is terminated from government employment).

---

[14] The Fourteenth Amendment is applicable in part to the Virgin Islands. See Revised Organic Act of the Virgin Islands § 3 (codified at 48 U.S.C. § 1561 (1988)).

[15] See Complaint ¶ 61.

It is well-established that, in order to state a claim under the Due Process Clause, plaintiffs must first "establish that a property interest existed" and second "that due process was violated in the deprivation of that property interest." Schuster v. Thraen, 18 V.I. 287, 296 (D.V.I. 1981). It is similarly beyond debate that, in order to have a property interest in a benefit, an individual must have a "legitimate claim of entitlement" to the benefit, Board of Regents v. Roth, 408 U.S. 564, 577 (1972), and that state or, in this case, territorial law determines whether such a claim exists. See Schuster, 18 V.I. at 296. Accordingly, it is to local law that we first turn.

Virgin Islands law provides that government employees shall receive benefits from the Retirement System upon the occurrence of any one of four events: retirement,[16] work-related disability,[17] non-work related disability,[18] or death.[19] In addition, employees who separate from government service prior to retirement may obtain a refund of their accumulated contributions to the System.[20] Plaintiffs allege that they have a property interest in these benefits[21] and that defendants have jeopardized this property without due process of law through various actions and inactions.[22] Defendants, on the other hand, contend that no retired employee has been deprived of a service annuity calculated according to statutory law,[23]

---

[16] See V.I. Code Ann. tit. 3, § 706 (1993 Supp.).

[17] See id. § 708.

[18] See id. § 710.

[19] See id. § 712.

[20] See id. § 713.

[21] Plaintiffs specifically allege that they have a property interest in receiving benefits upon retirement or departure from government service. See Complaint ¶ 61(a)–(b). They have not asserted a property interest in receiving benefits upon disability or death, although presumably the principles articulated herein would determine whether such rights exist.

[22] See, e.g., id. ¶ 63 (stating that "[a]s a direct and proximate result of the Defendants' conduct, members of the class who are currently working for the government or who have not withdrawn their contributions from the Retirement System, may be denied in the future their refund [or] basic retirement annuity"); id. ¶ 64 (alleging that "as a direct and proximate result of the Defendants' conduct, members of the class have been denied or may be denied their right to receive retirement benefits secured to them by law").

[23] See V.I. Code Ann. tit. 3, § 706 (1993 Supp.).

and no departing employee has been unable to collect accumulated benefits.[24]

### 1. *Plaintiffs' Property Interest in Retirement Annuity Payments and Accumulated Contributions*

To the extent that plaintiffs' due process claim rests upon the deprivation of retirement annuity payments or accumulated contributions, it cannot survive. It is clear from the face of their complaint that plaintiffs do not allege—nor is there any evidence to suggest—that they have been deprived of these benefits as yet. Instead, plaintiffs state that "members of the class who are currently working for the government or who have not withdrawn their contributions from the Retirement System *may be denied in the future* their refund [or] basic retirement annuity."[25] The complaint elsewhere indicates that three of the plaintiffs—Fredericks, Donovan, and Barthlett—are currently receiving their retirement annuities.[26] Plaintiffs do not allege that any of them has made a request for a refund that has been dishonored. Because there has been at most merely a threatened deprivation of plaintiffs' property and because it is not clear that actual deprivation is particularly imminent, this portion of Count One fails to state a claim under the Fourteenth Amendment.[27] Although this Court fully appreciates the dilemma confronting these present and future retirees who wish to ensure that the GERS will be able to make payments as they come due, the Due Process Clause regrettably provides no solution to the potential insolvency of the Retirement System.[28]

---

[24] See id. § 713.

[25] Complaint ¶ 63 (emphasis added).

[26] See id. ¶¶ 7–9.

[27] Cf. Schroeder v. City of Chicago, 927 F.2d 957, 960 (7th Cir. 1991) (stating that "[w]ithout a deprivation, the issue of due process does not arise"); Merrow v. Goldberg, 674 F. Supp. 1130, 1132 (D. Vt. 1986) (dismissing plaintiff's claim of deprivation of his liberty interest without due process for failure to state a claim where plaintiff's complaint only contained "conjecture regarding possible injury or threat of injury to his ability to teach that . . . [he might] face at some undefined point in the future").

[28] Cf. Lindsey v. Normet, 405 U.S. 56, 74 (1972) (observing that "the Constitution does not provide judicial remedies for every social and economic ill").
Of course, the same considerations that leave this portion of Count One vulnerable to defendants' motion to dismiss also render it suspect from the per-

## 2. *Plaintiffs' Property Right to an Automatic Increase of Retirement Annuity Payments and a Supplemental Cost-of-Living Increase of Such Payments*

Plaintiffs next allege in Count One of their lawsuit that they have a property right to an automatic, annual increase of their service retirement annuity and to a supplemental cost-of-living increase of the annuity. Local law provides that the Board shall "[r]ecommend to the Governor and the Legislature not less than biennially an adjustment in benefits for all annuitants and pensioners based on a review of cost-of-living and related economic factors and consistent with actuarial projections on the solvency of the System."[29] Plaintiffs allege that they have been deprived of this right because "the retired members of the class have not received any supplemental cost-of-living increase" since 1988.[30]

Although this Court must assume that plaintiffs' factual allegations are accurate at this stage of the proceedings, we do not believe that local law creates a claim of entitlement to supplemental cost-of-living increases. At most, local law creates an expectation for such benefits. Furthermore, it would appear from the face of plaintiffs' complaint that the minimal requirements set forth in the statute have been met. As noted, the Board is required to recommend a supplemental cost-of-living increase biennially, and plaintiffs state that such a recommendation was made by the Board on January 30, 1992.[31] Plaintiffs also note that the Board's recommendation was rejected by the Governor on April 3, 1992, allegedly because it was too small, and that the Board would have been in a position to recommend a larger increase if GERS funds had been managed more prudently. However, the law does not require that the Governor approve supplemental cost-of-living increases on a biennial or other basis. The fact that lawmakers have held out the possibility of supplemental cost-of-living benefits does not provide

---

spective of Article III's case or controversy requirement. As the Supreme Court has recently stated, "[a]llegations of possible future injury do not satisfy the requirements of Article III. A threatened injury must be 'certainly impending' to constitute injury in fact." Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) (citations omitted).

[29] V.I. Code Ann. tit. 3, § 715(b)(8) (1993 supp.).

[30] Complaint ¶ 52.

[31] The pleadings do not indicate whether a recommendation has been made during the 1994 calendar year.

these plaintiffs with any "property" right to such increases. Cf. Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex, 442 U.S. 1, 9 (1979) (determining that "[t]here is a crucial distinction between being deprived of a liberty one has . . . and being denied a conditional liberty that one desires").[32]

We believe, however, that plaintiffs do have a property right to an automatic increase in their retirement annuity based upon local law. The Legislature has decreed that "[a]ny member . . . shall be entitled to an annual increase in his basic retirement annuity," that "[t]he annual increase in annuity for service retirement shall be 1½ percent of the basic retirement annuity," and that such increase shall be made "only if the annuitant is age 60 or over."[33] Indeed, the GERS does not dispute that local law creates a property interest in the automatic increases, but it argues that plaintiffs have failed to state a claim under the Fourteenth Amendment because: (1) local law provides an adequate postdeprivation remedy, and (2) none of the plaintiffs has been deprived of this increase because two received these monies and a third is not eligible under the statute to receive an increase until July 1994.

We disagree with defendants' contention that plaintiffs' claim cannot survive because Virgin Islands law furnishes plaintiffs with an adequate postdeprivation remedy.[34] The statutory provision that defendants rely upon to support their position does in fact direct the Board to adjust future payments to compensate for past

---

[32] Our determination that plaintiffs do not have a property right to supplemental cost-of-living increases based upon the solvency of the GERS is consistent with our determination that plaintiffs also lack any property interest in the interest and dividend earnings of the System or in the secure operation of the System without an unfunded liability. See infra pp. 25–27.

[33] V.I. Code Ann. tit. 3, § 730(b), (d) (1993 Supp.).

[34] Plaintiffs, of course, have alleged that they are entitled to a predeprivation remedy. For purposes of this motion, however, we need conclude only that plaintiffs are at least entitled to a postdeprivation remedy. Moreover, due process does not always require a predeprivation remedy. See Goldberg v. Kelly, 397 U.S. 254, 263-64 (1970) (holding that a pretermination hearing was required before welfare recipients could be deprived of their benefits because "termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits," but noting that "some governmental benefits may be administratively terminated without affording the recipient a pre-termination evidentiary hearing") (emphasis in original).

errors;[35] however, it does not purport to provide System benefici-aries with a mechanism to assert a claim that their benefits have not been duly paid or with a right to receive an impartial ruling on such claims. Section 724 simply appears to direct the GERS to cor-rect its own internal bookkeeping mistakes when and if such errors are discovered by it.[36]

Defendants also contend that plaintiffs' claim cannot survive be-cause none actually has been deprived of the automatic increase. To support this argument, they have supplied the affidavit of the Director of Benefits for the GERS.[37] This Court has provided plain-tiffs with an opportunity to rebut this material,[38] and they have failed to do so. Accordingly, because there is no genuine factual dispute that plaintiffs have not been deprived of the automatic in-crease to which they are entitled under law,[39] we hold that defend-ants are entitled to judgment in their favor as to this issue. This portion of the complaint also shall be dismissed.

---

[35] See V.I. Code Ann. tit. 3, § 724 (1967). This provision provides in pertinent part as follows:

Should any change or error in the records result in any member or benefici-ary receiving from the system more or less than he would have been entitled to receive had the records been correct, the Board shall correct such error, and as far as practicable shall adjust the future payments in such manner that the actuarial equivalent of the annuity or benefit which such member or beneficiary was correctly entitled to shall be paid.

[36] Another provision of Virgin Islands law provides that "(t]he Board shall sit as a panel from time to time, but not less than once monthly, to . . . decide griev-ances of retired Government employees. Whenever possible, the Board shall remedy the grievance in an equitable manner." Id. § 715(f). Defendants, how-ever, do not assert that this section provides plaintiffs with an adequate post-deprivation remedy and we do not decide that issue today.

[37] See Affidavit of Katherine Holder ¶ 8 (stating that "As [of] July 1, 1993 all eligi-ble retirees had received their annual annuity cost-of-living increase").

[38] See Fed. R. Civ. P. 12(b) (stating that "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56"). By order dated May 16, 1994, this Court informed the parties that it would treat this portion of defendants' motion to dismiss as a motion for summary judgment and ordered plaintiffs to respond to the affidavit on or before May 24, 1994.

[39] In response to this Court's order, plaintiffs have indicated that they "defer . . . to the records of Ms. Holder over their unsubstantiated recollections" and "withdraw their claim" that they did not receive the automatic annual in-creases. Opposition to Motions to Dismiss at 13 n.6.

### 3. *Plaintiffs' Property Interest in Annual Reports Reflecting the Financial Condition of the GERS*

■ Plaintiffs in this case also contend that, by virtue of the existence of local law requiring the GERS to prepare and furnish to members of the Retirement System an annual report reflecting the financial condition of the GERS,[40] they have a "property" interest in receiving such information and that defendants have deprived them of this right without due process of law.[41] Although it is true that "[m]uch of the exiting wealth in this country takes the form of rights that do not fall within traditional common-law concepts of property,"[42] we note at the outset that this Court has located few reported cases that consider under what circumstances, if at all, individuals obtain a property interest in the receipt of information.[43] However, local law does set forth in detail the content and timing of these annual reports, thereby providing a basis for a find-

---

[40] Local law stipulates that:
> Not later than four months following the close of each fiscal year, the Board shall transmit to the Governor and the Legislature an Annual Report on the operations of the System containing, among other things, a balance sheet on the financial condition of the System, a statement of income and expenditures for the year, a report on the most recent actuarial valuation of its assets and liabilities of no later date than three years prior to the time of the report, a detailed statement of the investments acquired and disposed of during the year, a list of investments owned; and other statistical and financial data which may be necessary for a proper understanding of the financial condition of the System and the result of its operations. The Board shall also transmit to each member of the System, the Annual Report containing the above-mentioned information and a short explanatory discussion of each topic, which Annual Report shall be promptly made available to the news media.
> V.I. Code Ann. tit. 3, § 715(a)(5) (Supp. 1993).

[41] Plaintiffs seemingly contend that this portion of the statute contains both a substantive and a procedural component. Otherwise stated, they assert that they have an absolute right to receive this information and that they must be provided notice, in the form of such information, before defendants are permitted to take actions that are detrimental to the financial stability of the System.

[42] Goldberg v. Kelly, 397 U.S. at 262 n.8.

[43] But see, e.g., United States v. Slay, 717 F. Supp. 689, 692 (E.D. Mo. 1989) (determining that municipality did not have a property interest in receiving accurate information under mail and wire fraud statutes); Steptoe v. Beverly Area Planning Ass'n, 674 F. Supp. 1313, 1323 (N.D. Ill. 1987) (holding that plaintiffs did not have a property right under 42 U.S.C. § 1982 to receive comprehensive housing information from a voluntary, noncommercial organization).

ing that these members have a "legitimate claim of entitlement"[44]—and thus, a property interest—in receiving such reports. Accordingly, we decline to grant defendants' motion to dismiss this portion of plaintiffs' complaint.[45]

### 4. *Plaintiffs' Property Interest in Retirement Benefits Derived From the Interest and Dividend Income Earned by Contributions and Plaintiffs' Property Interest in the Secure Operation of the Retirement System Without an Unfunded Liability*

Plaintiffs also allege in Count One of their complaint that defendants have deprived present and future retirees of their property interest in receiving retirement benefits derived from the interest and dividend income earned by the contributions made on their behalf and that defendants have deprived them of their property interest in the secure operation of the Retirement System without an unfunded liability.[46] In asserting that they have a property right to receive retirement benefits derived from the dividend and interest income earned by the contributions made on their behalf and a similar interest in the ability of the System to meet its financial obligations, plaintiffs undoubtedly rely upon the existence of local law concerning these matters.[47] In addition, plaintiffs reason that their statutory right to receive annuity payments upon retire-

---

[44] Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

[45] Because this Court has concluded that plaintiffs have a property interest in receiving the annual reports, we are inclined to grant their request for a permanent injunction mandating that defendants furnish them with such reports from this time forward. We will, however, grant defendants twenty days from the date of entry of this opinion within which to demonstrate good cause why such injunction should not issue.

[46] See Complaint ¶ 61(f)–(g).

[47] Virgin Islands law provides that the Board shall "[a]uthorize the purchase and sale of investments by the System as may be proposed by the Administrator" V.I. Code Ann. tit. 3, § 715(a)(3) (1993 Supp.), and describes in detail permissible and impermissible investments, see id. § 717. In addition, the legislature has decreed that "[a]ll interest and dividends derived from investments, and any gains from the sale or exchange of investments, shall be credited by the treasurer to the account of the system." Id.; see also id. § 718(f) ("The employer shall make contributions which together with the members' contributions and the income of the system will be sufficient to provide adequate actuarially determined reserve for the annuities and benefits herein prescribed").

ment depends upon the receipt of interest payments and dividends from monies held by the GERS and upon the ability of the GERS to operate without an unfunded liability.

It does not appear that plaintiffs' asserted property right to receive retirement benefits derived from the interest and dividend income earned by contributions made on their behalf differs in any significant respect from their asserted right to receive a basic service retirement or disability annuity or accumulated contributions upon withdrawal from government service. As explained above, plaintiffs cannot state a constitutional claim when their allegations merely concern potential future deprivation of benefits rather than an actual present deprivation.[48] Accordingly, this portion of plaintiffs' complaint also fails to state a claim and, as such, it must be dismissed.[49]

Plaintiffs also allege that they have a right to have the System operate securely without an unfunded liability and that they have been deprived of this right because the GERS presently has an unfunded contingent liability of approximately 200 million dollars. According to plaintiffs, if each government employee demanded retirement benefits or accumulated contributions at once, the GERS would experience a 200 million dollar shortfall. Even if we accept these allegations as true, we are nevertheless unable to conclude that plaintiffs have a cognizable property interest in the secure operation of the System. Although local law requires that the GERS maintain an adequate actuarially determined reserve, it does not specifically describe the characteristics of such a reserve nor is it clear that the reserve would necessarily permit each member to

---

[48] See supra pp. 16–17.

[49] Plaintiffs attempt to buttress their contention that they have a property interest in the interest and dividends earned by the System by reference to section 718 which, as this Court today holds, gives plaintiffs a property right to receive information concerning the financial status of the GERS on an annual basis. See supra pp. 23–24. They reason that if present and past government employees did not have a legitimate expectation that they would profit from contributions, the legislature would not have required the GERS to furnish them with annual reports and that, in addition, if their interest in the System was limited to their own contributions, the legislature would have required only that the GERS provide each individual with information regarding his or her contributions rather than the overall earnings of the System. We do not agree. Although it is not entirely clear why the legislature enacted section 718, we cannot conclude that the statute was intended to, or should be construed as, conferring the relatively vast property rights that plaintiffs urge this Court to recognize.

180

withdraw contributions simultaneously or to be paid retirement benefits at once. Therefore, this portion of plaintiffs' complaint also fails to state a claim upon which relief can be granted.

### 5. Plaintiffs' Property Right to Sue Derivatively on Behalf of the GERS

Based upon this Court's review of the applicable law, we must conclude that this element of plaintiffs' due process claim is also infirm. Plaintiffs contend that they have been deprived without due process of their

> right to sue derivatively on behalf of the GERS to recover and to have restored to the GERS damages representing the economic harm suffered by the GERS . . . as a result of the failure of the GERS Board . . . and its treasurer to protect the interest income and dividend income earned by the assets of the GERS.[50]

No local law creating such a right or entitlement is identified; moreover, assuming that common law principles recognize a right to bring a derivative action, plaintiffs have not alleged sufficient facts to permit this Court to conclude that defendants have acted to deprive them of this "right." Indeed, the fact that plaintiffs have initiated this action, and could undoubtedly institute a similar action in territorial court, suggests that this particular right, if it exists at all, remains intact.

### C. Plaintiffs' Allegation that the Government Has Taken Their Property Without Payment of Just Compensation

According to plaintiffs, the Government of the Virgin Islands has retained for its use and benefit funds belonging to the Retirement System, as well as interest income from investments made by the Retirement System, thereby depriving them of their property without just compensation.[51] Count Two of plaintiffs' complaint states:

> By paying retirement contributions late, and by commingling GERS funds with Government funds, to the detriment of the class, the Government has taken private property, that is, the earnings that accrued on private property belonging to each member of the class and to the GERS, for public use, without

---

[50] Complaint ¶ 61(h).

[51] The Fifth Amendment is applicable to the Virgin Islands. See Revised Organic Act of the Virgin Islands § 3 (codified at 48 U.S.C. § 1561 (1988)).

181

payment of just compensation, in violation of the Fifth Amendment to the U.S. Constitution and Section 3 of the Revised Organic Act.[52]

In their motion to dismiss, the government argues that this portion of the complaint does not adequately set forth a violation of the Fifth Amendment. To withstand the motion to dismiss, "plaintiffs must . . . show that they possess a recognized property interest which may be protected by the Fifth Amendment." Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 973 (1st Cir. 1993).

Although Count Two is not entirely free from ambiguity, plaintiffs seemingly allege that the government has taken, without payment of just compensation, the following property rights or interests belonging to them: (1) contributions to the Retirement System made by current employees; (2) contributions made by the government on behalf of current employees; (3) the interest that has accrued on employee contributions; and (4) the interest that has accrued on contributions made by the government. As noted, plaintiffs allege in their complaint that, instead of promptly remitting employer and employee contributions to the GERS, the government has kept these monies, and the interest and dividend income generated by these monies, in its own accounts and for its own benefit.

This Court need not look beyond the statutes establishing the GERS to determine that plaintiffs do not have a property interest in the contributions made by the government on behalf of current employees.[53] Local law unequivocally states that "[t]he amounts contributed by the employer on behalf of an employee *shall not* be considered as the employee's contributions for any purpose. . . ." V.I. Code Ann. tit. 3, § 718(j) (1993 Supp.) (emphasis added). Furthermore, it is axiomatic that if plaintiffs do not have a property interest in the contributions made by the government, they cannot successfully assert a property right to the interest or dividend income actually or potentially earned by those contributions.

It is clear, on the other hand, that members of the System possess some rights regarding their own contributions to the Retirement

---

[52] Complaint ¶ 71.

[53] The government's contribution is calculated based upon a percentage of the employee's annual compensation. See V.I. Code Ann. tit. 3, § 718(g) (1993 Supp.).

System. For example, individuals who resign or are terminated from government employment have a property right to retrieve their "accumulated contributions." Id. § 713(a). In addition, individuals who retire have a right to receive a basic retirement annuity and the annuity is funded, at least in part, by the recipient's prior contributions to the GERS. However, as we concluded earlier, plaintiffs do not allege that any of them has made a request to withdraw accumulated contributions which has been dishonored, that any of them has received a miscalculated annuity, or that any of them has been completely deprived of an annuity to which they are entitled under law.[54] Thus, plaintiffs' Fifth Amendment claim suffers from a similar defect as their Fourteenth Amendment claim: as yet, plaintiffs have experienced neither a "taking" nor a "deprivation" of monies contributed by them, but only an anticipated, possible future interference with these rights.

We also hold that the remaining element of plaintiffs' Fifth Amendment claim—that they have a property right to the interest and dividends that have accrued or may accrue on their contributions and that the government has "taken" this property without payment of just compensation—also cannot withstand defendants' motion to dismiss. This proposition would appear to be conclusively established by the numerous cases holding that, although pension plan beneficiaries have a vested right to receive statutorily determined benefits,[55] they do not have any "entitlement to, or right to direct the retention of, the particular assets that are held for investment purposes in the pension fund." Withers v. Teachers' Retirement System, 447 F. Supp. 1248, 1260 (S.D.N.Y. 1978), aff'd, 595

---

[54] The facts of this case are easily distinguishable from Bennett v. White, where the Third Circuit reasoned that a takings claim could be brought based upon a showing that defendant state welfare officials had underpaid refunds to some plaintiffs and that others "never received any refunds of child support payments to which they were entitled." 865 F.2d 1395, 1402 (3d Cir.), cert. denied, 492 U.S. 920 (1989).

[55] It is clear that plaintiffs in this case also have a vested right to receive certain benefits. Virgin Islands law provides, for example, that "(e)ach member shall, by virtue of the payment of contributions to this system, receive a vested interest in such contributions." V.I. Code Ann. tit. 3, § 722 (1967); see also id. § 723 ("The right of any member or other beneficiary to any annuity, benefit or refund shall accrue as of the date of establishment. . . . No annuity or benefit shall be increased, decreased, revoked or repealed, except for error, or where specifically otherwise provided by this chapter.").

F.2d 1210 (2d Cir. 1979); see also Castellano v. Board of Trustees of the Police Officers' Variable Supplements Fund, 937 F.2d 752 (2d Cir.), cert. denied, 112 S. Ct. 378 (1991); Crown v. Trustees of the Patrolmen's Variable Supplements Fund, 659 F. Supp. 318, 320 (S.D.N.Y.), aff'd, 819 F.2d 47 (2d Cir. 1987); Tron v. Condello, 427 F. Supp. 1175 (S.D.N.Y. 1976).[56] Neither the statutory law of this territory[57] nor the case law cited by plaintiffs would appear to compel a different result in this case.[58]

---

[56] In each of these cases, the court upheld legislation directing that the interest and dividends earned by the pension program would be used to fund supplemental benefits for some, but not all, beneficiaries of the plan. Admittedly, the facts of this case are somewhat dissimilar because the earnings (and, to some extent, the principal itself) are allegedly being used by the government, rather than the GERS, for purposes that do not directly benefit plaintiffs. Nevertheless, we do not conclude that this difference assists the plaintiffs in their effort to assert a property right to the interest and dividend income earned by the Retirement System. The GERS Board of Trustees, like the trustees of the pension plans in those cases, is empowered to determine appropriate investments for the System. Compare, e.g., Sgaglione v. Levitt, 337 N.E. 2d 592, 595 (N.Y. 1975) with 7 V.I. Op. A.G. 274, 275 (1974). See also Board of Trustees v. Mayor and City Council of Baltimore, 562 A.2d 720, 739 (Md. 1989) (ordinance requiring city pension plans to divest their holdings in companies doing business in South Africa did not violate the takings clause even though lower rate of return meant that plan members might receive smaller variable benefits because "the beneficiaries of a public retirement system have no right to direct the investment of the systems' assets"), cert. denied, 493 U.S. 1093 (1990).

[57] As defendants accurately observe, plaintiffs' right to receive a retirement annuity does not depend upon the amount of interest earned by the GERS. Rather, the retirement annuity is calculated according to a formula that is based upon the number of years of credited service and the average salary earned by the individual. In addition, the annuity is subject to certain statutory minimum and maximum amounts. See V.I. Code Ann. tit. 3, § 706 (1993 Supp.). Local law also provides that the accumulated contribution does not include interest. See id. § 702.

[58] Plaintiffs mainly rely upon the Supreme Court's decision in Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155 (1980), to buttress their Fifth Amendment claim. However, despite the Court's seemingly sweeping pronouncement in Webb's that "any interest on . . . [a] fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal," id. at 162, it is clear that the holding in that case cannot be construed quite so broadly. Indeed, many courts of appeal have refused to extend Webb beyond what the Supreme Court described as the "narrow circumstances of [that] case," id. at 164. See, e.g., Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 975–76 (1st Cir. 1993); Rogers v. Bucks County Domestic Relations Sect., 959 F.2d 1268, 1276–77 (3d Cir. 1992); Cone v.

## D. *Plaintiffs' Allegation that the Individual Defendants Have Violated the Civil Rights Act, 42 U.S.C. § 1983*

The final federal count in plaintiffs' complaint alleges that individual members of the Board of Trustees of the GERS and the treasurer of the GERS have violated the federal Civil Rights Act, 42 U.S.C. § 1983,[59] by depriving plaintiffs of their property without due process of law. Plaintiffs have sued these individual defendants in their official capacities and have requested an order directing them to take certain actions in the future.[60]

As the Ninth Circuit has recently stated:

> A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process. The Due Process Clause does not create substantive rights in property; the property rights are defined by reference to state law.

Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). In their motions to dismiss, the individual defendants contend that Count Three of plaintiffs' complaint is legally infirm because plaintiffs have failed to surmount the first hurdle—that is, they have not identified a property interest that is the subject of the alleged deprivation. Defendants also argue that, even if plaintiffs have suc-

---

State Bar of Florida, 819 F.2d 1002, 1007 (11th Cir.), cert. denied, 484 U.S. 917 (1987).

[59] 42 U.S.C. § 1983 provides in relevant part as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[60] Initially, Molloy alleged that all of the defendants had violated section 1983. The complaint was amended to allege that the individual defendants, in their individual capacities, were liable for violations of the Civil Rights Act, and later amended to name only the individual defendants in their official capacities. Accordingly, the complaint no longer runs afoul of Ngiraingas v. Sanchez, 495 U.S. 182, 192 (1990), which held that a territory is not a "person" within the meaning of section 1983, or its progeny. See, e.g., Guam Soc'y of Obstetricians & Gynecologists v. Ada, 962 F.2d 1366, 1370 (9th Cir. 1992) (holding that the governor of Guam is a person for purposes of the Act when sued in his official capacity for prospective relief).

cessfully identified a property interest, Count Three should be dismissed because defendants are shielded from liability by virtue of the doctrine of qualified immunity.[61]

Plaintiffs allege in Count Three of the complaint that they have a "property right to a secure retirement,"[62] a right "to have their funds safeguarded by the Individual Defendants,"[63] and a "property right to future retirement benefits."[64] In addition, this portion of the complaint also appears to allege that plaintiffs have a property right to interest and dividend income earned by employer and employee contributions to the System.[65] They apparently assert that those rights have their origin in the 1984 consent judgment, the fifth amendment, the fourteenth amendment, Virgin Islands law, and common law prohibiting fiduciaries from appropriating property for purposes unrelated to the lawful operation of the trust.[66]

We do not believe that Count Three of plaintiffs' complaint successfully states a claim against the individual defendants. Plaintiffs' asserted rights to a "secure retirement," to have system monies "safeguarded" by these defendants, and to "future retirement benefits," would appear to represent attempts to recharacterize the same basic concept. However, as explained above, local law does not grant present employees or retirees the right to direct the overall management of the System.[67] The complaint does not allege that any present retiree has not been paid the basic retirement an-

---

[61] Defendant Krigger maintains, in addition, that this claim should be dismissed because plaintiffs have failed to comply with the procedural requirements of the Virgin Islands Tort Claims Act, V.I. Code Ann. tit. 33, §§ 3408–3409 (1993 Supp.). This contention is without merit. See Moorhead v. Government of the Virgin Islands, 19 V.I. 453 (D.V.I. 1983). As this Court held in Moorhead, "where, as a result of the actions of territorial officials, there has been a 'deprivation' of substantive constitutional rights within the meaning of § 1983, compliance with the Virgin Islands Tort Claims Act is not a jurisdictional prerequisite to bringing a federal action." Id. at 458 (footnote omitted).

[62] Complaint ¶ 78.

[63] Id. ¶ 80.

[64] Id. ¶ 82.

[65] See id. ¶¶ 75-77 (stating that by commingling GERS and government funds, and failing to demand prompt transfer of government funds to GERS accounts, plaintiffs have been deprived of the time value of the contributions or the "float").

[66] See id. ¶ 80.

[67] See supra pp. 32–33.

186

nuity. Thus, there is no basis for concluding that these plaintiffs have been deprived of a "secure retirement." Moreover, the statute does not provide individuals who are presently employed with the right to any benefits whatsoever; therefore, those individuals also have not been deprived of "secure retirement" to the extent that they have such a right. Plaintiffs' allegation that they have a property right to "future" retirement benefits is unfounded for similar reasons. To the extent that these defendants have failed to "safeguard" system monies, plaintiffs must rely upon local rather than federal law to address this matter, as they attempt to do in Counts Four and Five of the Complaint. Finally, as explained above, plaintiffs do not have a legitimate claim of entitlement to interest and dividend income earned by System monies; accordingly, their contention that defendants have deprived them of the benefit of the "float" fails to state a claim. Thus, defendants' motion to dismiss Count Three will be granted.[68]

## IV. Defendants' Motion to Dismiss the Territorial and Common Law Claims for Lack of Subject Matter Jurisdiction

Having determined that only one of plaintiffs' federal claims can withstand defendants' motions to dismiss, we must now decide whether this Court may exercise supplemental jurisdiction over the territorial law claims set forth in Counts Four and Five of the complaint. This in turn depends upon whether those claims "are so related to claims in the action within [this Court's] original jurisdiction that they form part of the same case or controversy under article III of the United States Constitution." 28 U.S.C. § 1367(a). Defendants do not appear to dispute that plaintiffs' breach of fiduciary duty claim and the mismanagement and waste claim are part of the same "case or controversy."[69] They nevertheless contend that this Court should decline to exercise jurisdiction because these claims raise "novel or complex" issues of territorial law and

---

[68] In light of our determination that Count Three fails to state a claim and because plaintiffs have not named the individual defendants in their individual capacities, we do not need to address defendants' contention that they are protected by the doctrine of qualified immunity.

[69] Claims are regarded as forming part of the same "case or controversy" when they "derive from a common nucleus of operative fact." Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir. 1991) (citation omitted).

"substantially predominates over" the federal claims. Id. § 1367(c)(1)–(2).[70]

Although defendants correctly observe that resolution of Counts Four and Five of the complaint will require some interpretation of local law, we disagree with their contention that the issues are particularly novel or complex. We do find, however, that the territorial claims substantially predominate over the one surviving federal claim in this case. Resolution of Count Four of plaintiffs' complaint requires a determination of the scope of defendants' fiduciary duty to members of the Retirement System, including plaintiffs, and an assessment of whether defendants' alleged acts and omissions constitute a breach of that duty. Resolution of the mismanagement and waste claim raised in Count Five necessitates a determination whether, among other things, the members of the Board have failed to invest GERS monies in a proper manner. Together, these claims present factual and legal issues that far exceed the limited federal claim that has been found to withstand defendants' motions to dismiss. Case law in the Third Circuit holds that dismissal is warranted under such circumstances. See Rubenstein v. IU Int'l Corp., 506 F. Supp. 311, 318 (E.D. Pa. 1980) ("'If it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.'") (quoting United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966)). Moreover, this Court's refusal to exercise supplemental jurisdiction is not unjustified since the parties have not expended time or financial resources conducting discovery or otherwise refining the dimensions of plaintiffs' territorial law claims. See Growth Horizons, Inc. v. Delaware County, 983 F.2d 1277, 1284–85 (3d Cir. 1993).[71]

---

[70] Section 1367(c) provides in part that:
The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
(1) the claim raises a novel or complex issue of State law, [or]
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction[.]

[71] We emphasize that dismissal of Counts Four and Five is without prejudice to plaintiffs' ability to pursue these claims in the territorial court. Defendants, of course, maintain that these counts are improperly before this (and perhaps any other) Court because plaintiffs have failed to comply with the procedural

## CONCLUSION

Because we are a court of limited jurisdiction, we hold today that all but one of plaintiffs' claims cannot be adjudicated in this tribunal. Plaintiffs' federal claims are dependent upon a finding that local law has created a variety of property rights for members of the Retirement System and that defendants have deprived them of these rights. However, as explained in detail herein, we find that, with one exception, Virgin Islands law has not provided plaintiffs with a "legitimate claim of entitlement" to many of the "rights" they assert. Furthermore, to the extent that plaintiffs do have certain property rights, they have not and cannot allege that defendants have deprived them of these rights. Although a future collapse of the Retirement System would indeed be tragic for thousands of residents of this territory, and notwithstanding the possibility that certain defendants may have already engaged in conduct that violates local law, these are not matters that this Court may decide. Accordingly, we must dismiss virtually all of Count One and all of the remaining counts of the complaint. An appropriate order will be entered.

## ORDER

AND NOW, this 9th day of June, 1994, it is hereby

ORDERED that plaintiffs' motion for a temporary restraining order is DENIED; and it is further

ORDERED that plaintiffs' motion for a preliminary injunction is denied; and it is further

---

requirements of the Virgin Islands Tort Claims Act, V.I. Code Ann. tit. 33 §§ 3408–3409 (1993 Supp.), and because plaintiffs have failed to make a pre-litigation demand as required by the Federal Rules of Civil Procedure and applicable principles of corporate law, see Fed. R. Civ. P. 23.1; Lewis v. Curtis, 671 F.2d 779, 784 (3d Cir. 1982), and by the law of trusts. Cf. Struble v. New Jersey Brewery Employees' Welfare Trust Fund, 732 F.2d 325, 338 n.13 (3d Cir. 1984) (suggesting the existence of such a requirement but declining to determine whether requirement was applicable to particular case). Plaintiffs' response to these arguments is two-fold: first, they contend that the demand requirement is excused in this case; alternatively, they assert that the required demand was made by Molloy during his tenure as Administrator of the GERS. We intimate no opinion regarding the merit of any of these arguments, which must be renewed if plaintiffs elect to pursue these claims before the territorial court.

ORDERED that defendants' motion for class certification is DENIED; and it is further

ORDERED that defendants' motion to dismiss Count One of plaintiffs' complaint is GRANTED, with the exception of the claim set forth in paragraph 61(e) of Count One of plaintiffs' complaint, as to which defendants' motion to dismiss for failure to state a claim is DENIED; and it is further

ORDERED that defendants' motion to dismiss Counts Two, Three, Four, and Five of plaintiffs' complaint is GRANTED; and it is further

ORDERED that, within twenty (20) days of the date of issuance of this order, defendants shall show good case why a permanent injunction should not issue requiring them to comply with the requirements of V.I. Code Ann. tit. 3, § 715(a)(5) (1993 Supp.) and requiring them to furnish plaintiffs with the annual reports as required by law from this time forward, absent which a permanent injunction shall issue as described.