**Harry BELLAS, Plaintiff,**

v.

**CBS, INC. and Westinghouse Pension Plan, Defendants.**

**Civ.A. No. 98–1455.**

United States District Court,
W.D. Pennsylvania.

Oct. 20, 2000.

John T. Tierney, David B. Rodes, Theodore Goldberg, Goldberg, Persky, Jennings

& White, William T. Payne, Schwartz, Steinsapir, Dohrmann & Sommers, Pittsburgh, PA, for plaintiff.

Amy E. Dias, Todd C. Amidon, Jones, Day, Reavis & Pogue, George M. Medved, Henry W. Ewalt, Pepper Hamilton, Eric J. Sobczak, CBS Corp., Pittsburgh, PA, Brian T. Ortelere, Pepper Hamilton, Philadelphia, PA, Glen D. Nager, Andrew M. Kramer, Charles V. Stewart, Gregory G. Katsas, Jones, Day, Reavis & Pogue, Washington, DC, for defendants.

### OPINION and ORDER OF COURT

AMBROSE, District Judge.

Pending before this Court is a Motion of Plaintiff for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's Motion for Class Certification will be granted in part and denied in part. With regard to proposed sub-class (i), the Motion will be granted. With regard to proposed sub-class (ii), the Motion will be denied without prejudice and Plaintiff permitted to file within twenty (20) days of the date of this Opinion and Order, an Amended Complaint which either: (a) offers the names and qualifications of proposed named plaintiffs to represent sub-class (ii) or (b) incorporates a revised class description eliminating sub-class (ii) in its entirety, each alternative being explained more fully below and in the accompanying Order.

## 1. INTRODUCTION

### A. Factual History[1]

Plaintiff Harry Bellas initiated this action on August 31, 1998, alleging that Westinghouse Electric Corporation ("Westinghouse"), the predecessor-by-name-change to Defendant CBS, Inc. ("CBS"), impermissibly amended the Westinghouse Pension Plan ("the Plan") by restricting admission to and then eliminating entirely the "Special Retirement Pension" program applicable when an employee who met pre-determined age and service requirements was terminated through a "Permanent Job Separation" ("PJS").[2]

Prior to January 1, 1994 ("the pre–1994 version of the Plan"), the term "Permanent Job Separation" was defined in the Plan as meaning termination of an employee "through no fault of his own, for lack of work, for reasons associated with the business for whom [the employer] determines there is no reasonable expectation of recall." Bellas v. CBS, Inc., 221 F.3d 517, 521 (3d Cir.2000). An amendment to the Plan, adopted by CBS on January 1, 1994 ("the Amendment"), altered participants' entitlement to a Special Retirement Pension in two respects: (1) the Amendment made it harder to qualify for a Special Retirement Pension after January 1, 1997, by re-defining Permanent Job Separation as applicable only in those situations in which employment termination was due to job movement, product line relocation, or location close-down and (2) the Amendment eliminated the Special Retirement Pension entirely for terminations on or after September 1, 1998.

Plaintiff was employed by CBS and participated in the Plan at all relevant times, including at the time the Amendment was

---

1. Additional details of the factual history·of this case are included in Bellas v. CBS, Inc., 73 F.Supp.2d 493, 494–495 (W.D.Pa.1999); Bellas v. CBS, Inc., 73 F.Supp.2d 500, 501–503 (W.D.Pa.1999); and Bellas v. CBS, Inc., 221 F.3d 517, 519–521 (3d Cir.2000). Unless otherwise noted, the facts in this section are taken from Bellas, 73 F.Supp.2d at 501–503.

2. The Special Retirement Pension could begin as early as age 50 if the employee had worked for CBS at least 25 years and was the victim of "Permanent Job Separation" as defined in the text above. A Special Retirement Pension provided that an eligible employee who suffered permanent job separation would receive supplemental payments over and above the "Normal Retirement Pension" payable if he were to retire voluntarily at age 65. However, the "Special Retirement Pension" was not actuarially reduced to compensate for the fact that the employee could begin to receive it as much as 15 years earlier than the date on which he might otherwise be expected to retire. Assuming a person began receiving a Special Retirement Pension at age 50 and lived as long as another employee who retired at age 65, the person under the Special Retirement Pension would obviously receive a much greater total payout during his post-retirement life. Memorandum in Support of Plaintiff's Motion for Class Certification at 2.

adopted. Plaintiff was not notified of the Amendment until late in 1994 or until distribution of the January 1, 1995, Summary Plan Description. As of January 1, 1997, the date on which the new definition of the phrase "Permanent Job Separation" went into effect, Plaintiff was over age 50 and had more than thirty years of Eligibility Service at CBS.

As part of a coordinated layoff directed primarily at employees of senior age, Plaintiff's employment was terminated by CBS on December 31, 1997, through no fault of his own, through lack of work, for reasons associated with CBS' business and with no reasonable expectation of recall, i.e., under conditions which met the prior definition of PJS and would have qualified Plaintiff for a Special Retirement Pension under the pre–1994 version of the Plan. CBS did not inform Plaintiff of his eligibility for a Special Retirement Pension under the pre–1994 version of the Plan, thereby preventing him from making a claim under that version of the Plan.

### B. *Procedural History*

Plaintiff filed this suit in the form of a class action. Compl. ¶¶ 22–29. Count One of the Complaint alleged that the Amendment had the effect of eliminating or reducing an early retirement benefit or an early retirement-type subsidy in contravention of Section 204(g) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1054(g).[3] Count Two alleged that by adopting and implementing the Amendment, CBS violated the fiduciary duties for the Plan administrator set out in 29 U.S.C. § 1104(a), that is, to act solely in the interest of Plan participants and beneficiaries, to administer the Plan in accordance with both Plan governing documents and instruments and ERISA regulations, and to exercise care, prudence, and diligence in the performance of its responsibilities.[4] Plaintiff sought relief in the form of a declaratory judgment by this Court that implementation of the Amendment violated 29 U.S.C. § 1054(g) and 29 U.S.C. § 1104(a); payment by Defendants of Special Retirement Pensions to all members of the proposed class who satisfied or will satisfy in the future the pre-Amendment conditions for such a pension; costs, expenses and reasonable attorneys' fees; and other relief as the Court considered just. Compl., Prayer for Relief, at 8–9.

Defendants filed a Motion to Dismiss the Complaint, which I denied on June 29, 1999. *See Bellas v. CBS, Inc.*, 73 F.Supp.2d 493 (W.D.Pa.1999). At the same time, Plaintiff moved for partial summary judgment on Count One of his Complaint, i.e., the question of whether the 1994 Plan Amendment violated § 1054(g). *See Bellas v. CBS, Inc.*, 73 F.Supp.2d 500 (W.D.Pa.1999). The ruling of

---

**3.** 29 U.S.C. § 1054(g), "Decrease of accrued benefits through amendment of plan," provides in relevant part:

 (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan. . . .

 (2) For purposes of paragraph (1), a plan amendment which has the effect of—

 (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in the regulations), or

 (B) eliminating an optional form of benefit,

with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy.

29 U.S.C. § 1054(g), as amended.

**4.** 29 U.S.C. § 1104(a), "Fiduciary duties—Prudent man standard of care," provides in pertinent part:

 (1) [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

 (A) for the exclusive purpose of:

 (i) providing benefits to participants and their beneficiaries; and

 (ii) defraying reasonable expenses of administering the plan;

 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

 ... and

 (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a), as amended.

this Court was that the Permanent Job Separation benefit is "a subsidy that continues after retirement" and "a retirement-type subsidy." *Id.* at 508–509.

On July 13, 1999, Defendants filed a Motion to Certify my Order granting partial summary judgment for an interlocutory appeal to the Third Circuit pursuant to 28 U.S.C. § 1292(b), and that Motion was granted on July 29, 1999. The Court of Appeals, Greenberg, J., affirmed the grant of partial summary judgment, holding, as a matter of first impression, that

> the PJS Benefits offered under the Westinghouse Plan are both an early retirement benefit and a retirement-type subsidy protected under section 204(g), to the extent that they include the lifetime provision of a normal retirement benefit commencing after a covered job loss. To the extent the Westinghouse Plan provided PJS Benefits that did not continue beyond normal retirement age, those benefits are not protected by section 204(g).

*Bellas v. CBS, Inc.,* 221 F.3d 517, 540 (3d Cir.2000).[5]

On January 8, 1999, Plaintiff Bellas had moved for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff's Motion for Class Certification ("Plf.'s Mot. for Class Cert."), Docket No. 21. That Motion was stayed pending this Court's decisions on the Motion to Dismiss and the Motion for Partial Summary Judgment. Stipulated Order of January 20, 1999, Docket No. 25. Proceedings in this matter were further stayed during the Defendants' interlocutory appeal to the Third Circuit (Docket No. 35), but I denied for lack of jurisdiction a subsequent Motion by the Defendants to further extend the stay pending *certiorari* review by the United States Supreme Court

(Docket No. 48, September 26, 2000).[6] Parties have now fully briefed the pending question of class certification.

## II. *MOTION FOR CLASS CERTIFICATION*

### A. *Proposed Class*

Plaintiff's proposed class consists of:

> All persons who were participants in the Plan as of January 1, 1994, and who either:
>
> (i) were laid off by CBS after January 1, 1997, under circumstances meeting the pre-Amendment requirements for a Special Retirement Pension (excluding any such persons who received a Special Retirement Pension); or
>
> (ii) are still employed by CBS and are not yet eligible for Normal Retirement under the Plan.

Compl. ¶ 22.

Plaintiff states that the individuals described in sub-class (ii) of the definition above (i.e., CBS employees who are not yet eligible for Normal Retirement under the Plan) are included in order to provide them with prospective declaratory and injunctive relief if and when they are laid off in the future. Plf.'s Mot. for Class Cert. at 2. Plaintiff asserts that he satisfies the prerequisites of Fed.R.Civ.P. 23(a) and Rule 23(b)(2) or, alternatively, Rule 23(b)(3), and urges this Court to adopt the proposed class certification. Plf's. Mot. for Class Cert. at 2–3, *citing Walsh v. Pittsburgh Press Co.,* 160 F.R.D. 527, 531 (M.D.Pa.1994).

### B. *Standard of Review*

Plaintiff has the burden, as the moving party, to establish that all relevant requirements of Rule 23 have been met. *Walsh, id.* at 529, *citing Hoffman Electric, Inc. v. Em-*

---

**5.** The Court of Appeals refers to this case throughout its opinion as a class action, despite the fact that a class of plaintiffs has never been certified. See a discussion of the implications of this issue at *Bellas,* 221 F.3d at 541–542, Shadur, SDJ, concurring.

**6.** Plaintiff argues that Defendants' Opposition to Plaintiff's Motion for Class Certification is untimely in that it was not filed until October 6, 2000, nearly two months after the Court of Appeals decision was handed down on August 14,

2000. Defendants are correct when they respond that my Order of August 5, 1999, did not require them to file their opposition to the Motion for Class Certification until ten days after I lifted the stay. Inasmuch as I did not formally lift the August 5, 1999 stay when I denied Defendants' further motion to stay pending the appeal for *certiorari,* I believe Defendants' pleadings submitted within ten days of my September 26, 2000, Order are timely.

*erson Elec. Co.*, 754 F.Supp. 1070, 1075 (M.D.Pa.1991). "In a doubtful case any error, if there is to be one, should be committed in favor of allowing the class action." *Id.* Furthermore, a court may not consider the merits of the plaintiff's case in determining the certification motion, but must focus on whether the requirements of Rule 23 have been met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Once a court has determined it has jurisdiction over the individual claims, the decision to certify a class action for litigation of those claims is made at its discretion. *Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

## III. DEFENDANTS' PRELIMINARY OBJECTIONS

Defendants argue there are three fundamental reasons why this class certification motion should fail.

First, assuming the findings of this Court and of the Court of Appeals are not overturned on appeal to the United States Supreme Court, the Plan will be legally required to provide retirement benefits consistently and appropriately to all similarly-situated Plan participants, both sub-class (i) and sub-class (ii). Hence, there is no need for a class action because the Plan fiduciary will be obligated to administer the Plan in accordance with its pre–1994 terms as they apply to each past and present CBS employee who meets the requirements for a Special Retirement Pension. Defendants' Opposition to Plaintiff's Motion for Class Certification ("Defs.' Opp."), Docket No. 51, at 1, 6–9.

Secondly, if class certification were granted, Defendants contend that this Court will be forced to grapple with numerous individualized issues such as age, length of service, length of contributory participation, compensation level and retirement age that would have to be resolved before I could determine if an individual were entitled to PJS benefits, i.e., qualified to become a member of the class, and, if so, the monetary relief to which that member would be entitled. The need for these highly individualized analyses would defeat the commonality requirement of

Rule 23(a)(2), the cohesiveness requirement of Rule 23(b)(2) and the predominance requirement of Rule 23(b)(3). Defs.' Opp. at 1, 9–13. Furthermore, such individualized determinations would undermine the principal class action purpose of enhancing "the efficiency and economy of litigation." *Id.* at 9, citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

Finally, Defendants argue that Harry Bellas does not qualify to serve as a conscientious class representative because he is also serving as a named plaintiff in *Mueller v. CBS, Inc.*, CA No. 99–1310, a case now pending before this Court. As such, Mr. Bellas would have "conflicting loyalties to and demands from class members" in the two actions. More importantly, because his employment has already been terminated, he cannot represent the proposed second sub-class of individuals still employed by CBS and not yet eligible for Normal Retirement under the Plan. Defs.' Opp. at 1–2, 13–14.

I shall discuss the first two objections immediately below inasmuch as they apply to Plaintiff's Motion in general and consider the question of Mr. Bellas' suitability to serve as named plaintiff in the section below concerning Rule 23(a)(4).

### A. The "Lack of Need" Argument

As outlined above, Defendants object to certification because they assert there is no need to certify a class when, under the current holdings of this Court and the Third Circuit Court of Appeals, the Plan fiduciary is obligated to provide precisely the relief that Plaintiff seeks for all similarly-situated Plan participants. Defs' Opp. at 6. Plaintiff urges me to reject this argument for two reasons. First, the numerous cases cited by Defendants to support their "lack of need" argument deal only with cases in which the relief sought is solely injunctive as opposed to cases such as this in which plaintiffs also seek damages, interest and other monetary relief. Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for Class Certification, Exh. 1 to Plaintiff's Motion for Leave to Reply ("Plf.'s Reply"), Docket No. 52, at 3. Second, Plaintiff argues that the weight of

authority in the Third Circuit supports his position that requiring a plaintiff to refute such a "lack of need" argument would impose an additional burden not required by Rule 23 as currently stated. *Id.* at 4.

The circuits are split on the question of whether or not to apply in general fashion any type of "necessity doctrine" when considering a motion to certify a class.[7] While some circuits refuse to hear any "lack of need" arguments,[8] others apply the doctrine almost as a corollary to their Rule 23(a) analyses.[9] However, even those courts invoking the doctrine under some circumstances agree that it does not apply to cases in which there is a claim for monetary damages in addition to a request for injunctive and declaratory relief, as in the instant case. *See,* e.g., *Davis v. Smith,* 607 F.2d 535, 540 (2d Cir.1978) ("Where retroactive monetary relief is not at issue and the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class ... a district court may decline certification"); *Duprey v. Connecticut DMV,* 191 F.R.D. 329, 339 (D.Conn.2000) ("The necessity doctrine, however, does not apply to cases where there is a claim for monetary damages in addition to a request for injunctive and declaratory relief.... [T]he lack of a concession by the defendant as to commonality and typicality of the class weigh[s] against denial of class certification on the basis that it was a mere formality.").

Defendants have presented no Third Circuit law to support their argument that I should invoke the necessity doctrine in the context of a case involving monetary damages, such as this. Furthermore, the case primarily relied upon by the Defendants, *Molloy v. Monsanto,* 1994 WL 326237, 1994 U.S.Dist. LEXIS 8445 (D. V.I., June 9, 1994), is distinguishable from this matter in several regards. First, plaintiffs in that case were retirees of the government of the Virgin Islands itself, not laid-off workers of a private company. *Id.* at *4. Secondly, as distinguished from this suit for violation of specific ERISA statutes, the claims brought by the plaintiffs in *Molloy* were based on constitutional issues under the Fourteenth and Fifth Amendments to the United States Constitution, violation of due process under 42 U.S.C. § 1983, and state claims for breach of fiduciary duty, mismanagement and waste. *Id.* at *4–*5. Third, the relief sought by the *Molloy* plaintiffs was a preliminary injunction or a temporary restraining order requiring defendants to make timely payment of contributions into the Government Employees Retirement System, rather than any direct monetary relief. *Id.* The facts, class to be certified, and relief sought in *Molloy* are much more similar to those of *Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), than to those presented in this suit. In *Galvan,* the plaintiffs sought unemployment benefits under 42 U.S.C. § 1983. The Court of Appeals upheld the

---

**7.** "Like Newton's Law of Thermodynamics, for every class denial on the basis of lack of need, one is able to find a decision, or several decisions, often in the same circuit, where other courts have certified Rule 23(b)(2) classes under virtually the same circumstances.... A need requirement finds no support in Rule 23 and, if applied, would entirely negate any proper class certifications under Rule 23(b), a result hardly intended by the Rules Advisory Committee."

1 Herbert B. Newberg and Alba Conte, Newberg on Class Actions § 4.19, at 4–62, 4–70 (3d ed.1992) (collecting cases).

**8.** *See,* e.g., *Pederson v. Louisiana State Univ.,* 213 F.3d 858, 869 (5th Cir.2000) (remanding Title IX claim to district court to determine if decertification was impermissibly based in part on "lack of need" argument); *Brown v. Scott,* 602 F.2d 791, 795 (7th Cir.1979) ("if the requirements of Rule 23 are satisfied, class certification should not be

refused because of lack of need"); *Coleman v. Pension Benefit Guar. Corp.,* 196 F.R.D. at 199 (D.D.C.2000) (in an ERISA claim, "the Court is unaware of any case from the Court of Appeals of this Circuit adopting a "necessity" requirement in the Rule 23(b)(2) context").

**9.** *See,* e.g., *Dionne v. Bouley,* 757 F.2d 1344, 1356 (1st Cir.1985) ("we do not accept the concept of a strict 'necessity requirement' under Rule 23(b)(2); rather ... we shall look to the discretion the district court enjoys ... to deny class certification should it reasonably determine that class relief is not 'appropriate' "); *Wilcox v. Commerce Bank of Kansas City,* 474 F.2d 336, 346 (10th Cir.1973) ("the 'need' for class action treatment in a sense may be considered a vital, if not determinative, consideration as need inevitably relates to the problems of superiority, fairness and efficiency"); *Galvan v. Levine,* (2d Cir.), discussed in text.

district court's decision not to certify the class, concluding that "an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice is the archtype of one where class designation is largely a formality." *Id.* at 1261.

Finally, Defendants have failed to identify, and I have been unable to independently discover, any case law which applies the necessity doctrine to any motion for class certification other than those brought under Rule 23(b)(2).[10] Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." *In re School Asbestos Litigation,* 789 F.2d 996, 1008 (3d Cir.), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986) (citing Fed.R.Civ.P. 23(b) committee notes). Plaintiff here seeks damages and interest which compels a Rule 23(b) analysis under sub-section (3), as I have done below.

I therefore find unpersuasive Defendants' arguments that certification is unnecessary because as Plan fiduciaries they will be compelled under the current holding of this Court to provide all the relief sought by Plaintiff.

### B. *The Lack of Commonality Argument*

Defendants also argue that "the only conceivable reason for certifying a class here would be if doing so would achieve efficiency," but because of the "myriad individualized issues" presented in this case, such efficiency could not be achieved.[11] Defs.' Opp. at 9. Establishing a class in this instance, they argue, is impossible because Plaintiff cannot show that there are questions of law or fact common to the class as required by Rule 23(a)(2), the necessary "cohesiveness" required by Rule 23(b)(2) or the "predominant common issues" required by Rule 23(b)(3). Defendants obviously fail to recognize that although this Court and the Third Circuit Court of Appeals may have resolved the issue raised in Plaintiff's Count I, the common issue of breach of fiduciary duty remains to be resolved. If that issue is resolved in Plaintiff's favor, the relief sought is monetary damages, not only injunctive or declaratory relief. Compl., Prayer for Relief, at 8–9. Contrary to Defendants' contention that Count II is "superfluous" because resolution of Count I will provide Plan participants with all the relief they are entitled to under Count II, this Court clearly found Count II *not* superfluous when I denied Defendants' motion to dismiss as reported in *Bellas v. CBS, Inc.,* 73 F.Supp.2d at 497–500.

Defendants argue that the individualized nature of "reliance and resulting harm" that plaintiffs would have to prove in a suit for breach of fiduciary duty "weigh decisively" against certification. Defs.' Opp. at 11. As authority of this position, Defendants cite my recent decision in *Gritzer v. CBS, Inc.,* CA 98–2080, in which I declined to certify a class for breach of fiduciary duty. Def. Opp., Exh. E, Opinion and Order of Court, October 14, 1999. Defendants read my Order in *Gritzer* too broadly. The breach of fiduciary duty in *Gritzer* is couched in terms of misrepresentation, rather than failure to provide information. The *Gritzer* plaintiffs claim the defendants made certain misrepresentations to them concerning future eligibility for pension benefits; as a result of those representations, plaintiffs chose to continue with the company until the plant at which they worked was

---

**10.** Although I agree with and support the court's analysis in *Bacal v. SEPTA,* 1995 WL 299029, 1995 U.S.Dist. LEXIS 6609 (E.D.Pa., May 16, 1995), offered by Plaintiff in support of his position, that case and *Gatter v. Cleland,* 87 F.R.D. 66, 70 (E.D.Pa.1980) on which it builds also address the necessity doctrine in the context of a Rule 23(b)(2) analysis.

**11.** In their Opposition to Plf.'s Mot. for Class Cert., Defendants propose that class certification would also result in a "waste of judicial and Plan resources." *Id.* at 9. I have not found that assertion any more persuasive than their lack-of-need argument. Certifying this case as a class action

would not necessarily tax judicial resources because, if appropriate, the case could be bifurcated into liability and relief phases. *See,* e.g., *Coleman v. Pension Benefit Guar. Corp.,* 196 F.R.D. at 199 (D.D.C.2000), *citing Berger v. Iron Workers Reinforced Rodmen,* 170 F.3d 1111, 1116–17 (D.C.Cir.1999) (employment discrimination class action bifurcated into liability and damages phases; claims for back pay during damages phase referred to special master). The mere possibility that this case may require individualized benefit determinations is insufficient to bar class certification. *Coleman, id.* at 200.

closed, they were laid-off and the company denied them the benefits. Defs.' Opp., Exh. E, at 1. The necessity of proving the content of the alleged misrepresentations and showing each individual's reliance on those misrepresentations was sufficient to lead me to conclude that commonality was impossible to assure, thus, class certification was denied.

Here, by contrast, Plaintiff asserts that (1) he and other members of the putative class were not promptly informed of the 1994 Amendment (Compl. ¶ 15); and (2) although he met all the requirements for a Special Retirement Pension under the pre–1994 version of the Plan, he and other putative class members were not informed of their eligibility for the Special Retirement Pension, thereby preventing them from making a claim under the Plan (Compl. ¶¶ 18–19). Plaintiff does not allege affirmative misrepresentations but rather a deliberate act of withholding information, the basis for class certification for breach of fiduciary duty in numerous cases. For example, in *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir.1993), the plan administrator withheld information about the scope of an employee's insurance coverage from the employee's wife, leading her to forego certain medical treatment for the employee which in turn resulted in his death. The court concluded that the ERISA plan administrator had breached its fiduciary duty by failing to "convey complete and accurate information that was material to [plaintiff's] circumstances." *Id.* at 1303. *See, also, Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (generally addressing ERISA breach of fiduciary duty including failure to disclose material information related to benefits).[12]

Defendants' reliance on *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451 (11th Cir.1996) is ill-founded because *Hudson* is distinguishable on at least two grounds. First, in order to prevail in that case, plaintiffs would have had to show that all members of the class were uniformly told, as they claimed, that no changes in the company's medical benefits plan were imminent and that, contrary to speculation, no enhancements to their retirement plans were forthcoming. *Hudson, id.* at 457. Here, Plaintiff claims he simply was not informed about the availability of the Special Retirement Pension. Secondly, the *Hudson* plaintiffs allegedly relied on defendant's misrepresentations in making their decisions whether to retire or not. *Id.* Here, the putative plaintiffs were given no choice in the matter but were simply laid-off at Defendant's will.

Thus, I conclude that Defendants' argument that Plaintiff cannot show a common question of fact or law as required by Rule 23(a)(2) is insufficient to defeat Plaintiff's assertion of a common question of alleged breach of fiduciary duty by failing to disclose material information regarding the Plan. Furthermore, the requirement for "predominant common issues" required by Rule 23(b)(3) is satisfied by this same question. Because Rule 23(b)(2) is not applicable in this case, I need not address Defendants' argument that Plaintiff has failed to show sufficient "cohesiveness" under that portion of the Rule.

## IV. REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23

In determining whether this proposed class should be certified, I will be guided by Fed.R.Civ.P. 23 which provides:

(a) *Prerequisites to a Class Action.*

One or more members of a class may sue or be sued as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

---

**12.** These cases are not offered as a conclusion by the Court of the merits of Plaintiff's claims for breach of fiduciary duty nor of Defendants' liability or non-liability therefor, but merely as examples of cases in which such breach of duty was found in the failure of an ERISA fiduciary to provide information as compared to providing misleading information.

(b) *Class Actions Maintainable.*

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23.

Step One of a class certification decision is to determine if the proposed class meets the requirements of Fed.R.Civ.P. 23(a), that is, numerosity, commonality, typicality, and adequacy of representation. *Hoffman,* 754 F.Supp. at 1075–1078. Step Two is to determine if Plaintiff's action also satisfies the criteria of Rule 23(b)(2) or, alternatively, Rule 23(b)(3). Analysis under Rule 23(b) requires consideration of three additional issues: (1) appropriateness of final injunctive relief or corresponding declaratory relief with respect to the class as a whole, (2) predominance of the common questions of law or fact pertaining to the class as opposed to individual questions, and (3) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Hoffman, id.* at 1078–79; *Eisen,* 417 U.S. at 163, 94 S.Ct. 2140.

### A. *Rule 23(a) Analysis*

#### 1. *Numerosity*

The numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable," keeping in mind, however, that impractical "does not mean impossible." *Hoffman,* 754 F.Supp. at 1075. It is well-established in this Circuit that joinder is impracticable and thus the numerosity requirement is satisfied if the proposed class numbers 100 or more. *Welch v. Board of Directors of Wildwood Golf Club,* 146 F.R.D. 131, 135 (W.D.Pa.1993).

Plaintiff frankly acknowledges that he does not know the exact number of potential class members in either the sub-class of those who were laid off after January 1, 1997 and were denied the Special Retirement Pension (i.e., sub-class (i)) or the sub-class of those who may be laid off in the future under circumstances that would make them eligible to receive such enhanced retirement benefits (sub-class (ii)). Memorandum in Support of Plaintiff's Motion for Class Certification ("Mem. in Supp. of Plf.'s Mot."), Docket No. 23, at 6. Citing the CBS 1996 SEC 10–K report for the number of positions eliminated in the three preceding years, Plaintiff asserts that the number is "huge," i.e., "hundreds or even thousands." *Id.* at 6.

Defendants do not raise any objections to Plaintiff's assertion that the number of possible class members in this action meets the criterion for numerosity. I therefore conclude that the numerosity requirement of Rule 23(a)(1) is satisfied.

#### 2. *Common Questions of Law and Fact*

The commonality requirement is satisfied if there exist questions of fact or law common to all members of the prospective class. This requirement is easily met because it is not necessary that every question of law or fact be common to each member of

the class. *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir.1994). Factual differences among the claims of the putative class members do not defeat certification. *Id.* The latter point is particularly important in this case inasmuch as the two sub-classes proposed by Plaintiff are readily distinguishable on a factual basis, namely, the members of sub-class (i) have already been damaged by being deprived of retirement benefits for which they were allegedly eligible, as compared to the members of sub-class (ii) who not only have yet to suffer any damage, but indeed may never suffer such damage. However, a distinction such as this may be overcome when the question that does apply to both sub-classes may be solved in an identical manner, even though the individuals in the two sub-classes are not identically situated. *American Fin. System, Inc. v. Harlow,* 65 F.R.D. 94, 107 (D.Md.1974) (a Title VII case in which the court certified six subclasses of plaintiffs based on, *inter alia,* current or past employment status, although members of the subclasses differed by age and sex). Moreover, even dissimilar damage claims by various class members does not necessarily defeat commonality. The fact that individual plaintiffs may be entitled to differing amounts of compensation "is not fatal" to a class action. *In re Ikon Office Solutions, Inc. Securities Reg.,* 191 F.R.D. 457, 465 (E.D.Pa.2000).

■ Setting aside any claims that may still arise from related matters in the resolution of Count I,[13] the remaining common claim shared by all members of the class herein is that Defendants breached their fiduciary duty as Plan administrators by failing to inform plaintiffs of their rights to Special Retirement Pensions. I conclude that Plaintiff has satisfied his burden to demonstrate commonality.

### 3. Typicality

■ "Typicality exists when the legal or factual positions of the class representatives are sufficiently similar to the legal or factual positions of the other class members." *Welch,* 146 F.R.D. at 135. Typicality is distinguished from commonality in that the former considers the sufficiency of the named plaintiff and the latter evaluates the sufficiency of the class itself. *Hassine v. Jeffes,* 846 F.2d 169, 177, n. 4 (3d Cir.1988). While the named plaintiff's claims must be typical of the proposed class, they need not be identical. *Id.* This requirement is satisfied if the "class representative[s] ... possess the same interest and suffer the same injury as the class members." *East Texas Motor Freight Sys. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (citations omitted). Atypical elements of a claim may be "adequately treated by judicious severance or use of subclasses or other separate treatment of individual issues." *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985).[14] This use of sub-classes is exactly what Plaintiff proposes.

Plaintiff asserts that Bellas' claims are not "markedly different" from those of other class members and the legal theory on which he bases his claim is identical to that of the other members of the class. Mem. in Supp. of Plf.'s Mot. for Class Cert. at 9.

Defendants do not argue that Mr. Bellas' claims are not "sufficiently similar" to those of the class, but instead concentrate on the adequacy of his acting as named plaintiff for sub-class (ii) as discussed below. Without such objection to the typicality of the proposed class representative's claims, therefore, I conclude that Plaintiff has carried the burden of showing his individual circumstances are typical of those of the other class members.

---

13. Plaintiff takes exception to a comment made by Defendants on page 12 of their Opposition to Plaintiff's Motion for Class Certification to the effect that "there are off-set and other such relief issues that vary by individual." Plf.'s Reply at 7, n. 2. Resolution of that matter is not before the Court at this time but is noted as an example of questions that may still require judicial review in connection with Count 1 of Plaintiff's Complaint.

14. *See, also,* Fed.R.Civ.P. 23(c)(4) which provides "When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class."

#### 4. *Adequacy of Representation*

■ Rule 23(a)(4) requires that the representative party and his counsel fairly and adequately protect the interests of the class. In determining whether this requirement has been met, I must determine: (1) whether the named plaintiff has interests antagonistic to those of the class; and (2) whether plaintiff's attorney is qualified to conduct the proposed litigation. *Hoffman,* 754 F.Supp. at 1076; *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Defendants have the burden of showing that the proposed representative plaintiff or counsel are inadequate. *Hoffman, id.* Mere differences in respective interests are not sufficient to defeat an offer of a named plaintiff for the class; the standard under Rule 23(a)(4) is true antagonism between the class members and the putative representative. *Steiner v. Equimark Corp.,* 96 F.R.D. 603, 610 (W.D.Pa.1983).

#### (a) *Adequacy of Harry Bellas to serve as class representative:*

■ Defendants argue strenuously that Bellas is barred from serving as class representative because of his "inherent conflicts of interest and loyalties related to his involvement in the *Mueller* case" and, because he is no longer employed by CBS, he cannot represent the putative sub-class (ii) members, i.e., those who are still employed. Defs. Opp. at 13. It is true that Mr. Bellas is one of three named plaintiffs in *Mueller v. CBS, Inc.,* CA 99–1310, now pending before this Court. *Mueller* is an age discrimination case, brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, coupled with an ERISA breach of fiduciary duty claim. As Plaintiff points out, I recently held that *Mueller* does not

duplicate the claims brought in this suit in any way. Plf.'s Reply, Exh. F, Opinion and Order of Court, February 7, 2000 at 10–11.

Defendants do not offer,[15] and I have been unable to discover, any case law in which a court has concluded that because a plaintiff represents a class in one pending action, he is, *per se,* unable to act in a similar capacity in another class action.

The antagonism to be prevented by Rule 23(a)(4) is potential conflict between the named and unnamed plaintiffs in a class action. *Georgia State Conference of Branches of NAACP v. Georgia,* 99 F.R.D. 16, 34 (S.D.Ga.1983). Without evidence of inherent conflict of interest between Mr. Bellas' role in both pending suits more persuasive than a single instance in which Plaintiff's attorney instructed him not to answer certain questions during his deposition in *Mueller,*[16] Defendants' contention that the interests of Mr. Bellas in these two cases are inherently antagonistic appears to be unfounded. They have offered no evidence to show that his interests in this matter are in any way antagonistic to the putative class members' interests, nor that such antagonism would likely be created by Mr. Bellas acting as class representative here as well as in *Mueller.*

Rule 23(a)(4) does not require that the class representative be the best possible representative, but one who will pursue a resolution of the controversy in the interests of the class. *Georgia, id.* Defendants have offered no evidence that Mr. Bellas will not vigorously pursue resolution of this matter and so I find their arguments that he should be excluded as class representative to be unavailing. I therefore conclude that the interests of Mr. Bellas and the putative class members are not antagonistic and he is a suitable class representative.

---

**15.** *Kurczi v. Eli Lilly & Co.,* 160 F.R.D. 667, 679 (N.D.Ohio 1995), offered by Defendants to support this argument, is readily distinguishable because plaintiff in that case was attempting to maintain a separate, individual suit on exactly the same issues she was asserting in a class action pending simultaneously. As discussed above, *Mueller* addresses issues entirely different from those raised in this case; in addition, no evidence has been offered to show that Mr. Bellas is individually pursuing any claims against Defendants.

**16.** Defendants provide, but fail to take into account, a subsequent Order from this Court compelling Mr. Bellas to answer fully the questions that had been posed by Defendants' counsel at his deposition and to answer as well any related follow-up questions. Def. Opp., Exh. C, Order of Court, August 1, 2000.

The second problem raised by the Defendants, i.e., that Mr. Bellas cannot serve as named plaintiff for the sub-class of CBS employees who are still employed and not yet deprived of any Special Retirement Pension benefits, is the more easily solved: either that sub-class of plaintiffs is deleted from the suit or additional named plaintiffs are proposed. Here, there is no question that Bellas satisfies the description of the plaintiffs named in the first sub-class, i.e., a litigant who had "such a case or controversy at the time the complaint [was] filed." *Sosna v. Iowa*, 419 U.S. 393, 402, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Defendants have not pointed to any case law which prevents the naming of additional plaintiffs who met the description of the second sub-class as of August 31, 1998, the date on which Bellas filed this suit, and who are still employed by CBS. Indeed, this Court has allowed such action recently in *Mathews v. Kidder, Peabody & Co.*, CA 95–0085.[17] Plaintiff will be given the opportunity to file an amended complaint to satisfy either of the two alternatives described in the Order attached hereto.

(b) *Adequacy of counsel:*

In support of the second prong, adequacy of representation, the Plaintiff submits the resumes of Attorneys Theodore Goldberg, David B. Rodes, John T. Tierney, III and William T. Payne. Affidavit of William T. Payne in Support of Motion for Class Certification, Exhs. B, C, D, and E, respectively. A careful review of these documents reveals extensive experience in general litigation, class action litigation, and labor and employment law, including ERISA. I find these gentlemen to be qualified, experienced and generally capable to conduct the litigation. *See Wetzel*, 508 F.2d at 247. Defendants offer no objections to the qualifications of Plaintiff's attorneys.

I therefore find that, despite Defendants' opposition to Mr. Bellas acting as named Plaintiff in this matter as well as in *Mueller v. CBS, Inc.*, the requirements of Rule 23(a)(4) have been met as to sub-class (i);

furthermore, Plaintiff may file an Amended Complaint which names additional class representatives for sub-class (ii) in order to satisfy the adequacy-of-representation requirement for that sub-class.

Having reviewed all four prerequisites for establishing a class action, I hold that Plaintiff has carried his burden under Rule 23(a) of showing that there exists a putative class of plaintiffs of suitable number and common interest, that Mr. Bellas' interests are typical of the class, and that he and his attorneys will adequately represent the class in pursuing this action.

B. *Rule 23(b) Analysis*

Once a plaintiff has demonstrated that he has meet the prerequisites of a class action set out in Rule 23(a), he still must cross the hurdle of showing that he can maintain the action by satisfying Rule 23(b). Analysis of Rule 23(b) is conducted in the alternative, that is, Plaintiff must demonstrate that his suit meets the criteria of either Rule 23(b)(1), (b)(2) or (b)(3). Plaintiff argues that his suit meets the criteria of either Rule 23(b)(2) or (b)(3).

As noted above, Defendants argue that the critical issue in this matter has already been resolved by the holdings of this Court and the Third Circuit Court of Appeals in favor of Plaintiff and, by extension, in favor of all past and present employees similarly-situated. Therefore, only individualized claims remain and any class of plaintiffs proposed would be unable to meet the "cohesiveness" requirement of Rule 23(b)(2). Dep. Opp. at 1, 12. However, because I conclude that Plaintiff satisfies the requirements of Rule 23(b)(3), there is no need for me to also determine whether Plaintiff's suit meets the criteria of Rule 23(b)(2).

Passing the test of Rule 23(b)(3) requires two steps. First, Plaintiff must convince the court that questions of fact and law common to the members of the class predominate over any questions that affect only individual

---

**17.** The original named plaintiff, John W. Mathews, had invested in only one of three allegedly fraudulent real estate investment plans offered by defendants. After litigation was well underway, this Court allowed Mathews to amend his complaint to name additional plaintiffs to represent investors in the other two funds. Order of Court, Docket No. 54, October 2, 1996.

members, and second, that a class action would be superior to other methods to effect a fair and efficient adjudication of the controversy. Rule 23(b)(3), *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir.1977). Rule 23(b)(3) is "framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, but where class suit may nevertheless be convenient and desirable." *Coleman v. Pension Benefit Guar. Corp.*, 196 F.R.D. 193, 197–98 (D.D.C.2000) (internal citations omitted).

 The question of predominance under Rule 23(b)(3) focuses on whether the proposed class is sufficiently cohesive to permit a representative plaintiff to pursue the interests of the individual class members. Class certification is generally appropriate where, as Plaintiff alleges here, a defendant has engaged in a pattern of uniform activity and/or where each class member would have to prove many, if not all, of the same essential facts about defendant's activity. *Tenuto v. Transworld System*, 2000 WL 1470213 *3, 2000 U.S.Dist. LEXIS 14344, *11–*12 (E.D.Pa., September 29, 2000). The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Id.* at *3, 2000 U.S.Dist. LEXIS 14344, *12, *citing In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 316 (3d Cir. 1998).

 Factors to be considered in determining whether common questions of law or fact predominate and whether the class action is a superior method of adjudication include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability (or undesirability) of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3). *See also Hoffman*, 754 F.Supp. at 1079. With the exception of a brief analysis offered by Plaintiff regarding the advantage of a single adjudication to resolve a number of small but similar claims by numerous plaintiffs (Plf.'s Mem. in Supp. at 12–13), neither party addresses this portion of the Rule in any depth. Defendants do not claim—other than the objections discussed above—that litigation would be unduly burdensome or difficult. Neither party has presented evidence of any other action on the same issues commenced by or against prospective class members in this action.

 In light of my view that at least one common question of law predominates—the claim for breach of fiduciary duty—and in the absence of any persuasive argument as to why a class action would not be the most efficient and fair method of resolving the issues yet remaining and superior to any other method of adjudication, I conclude that the prerequisites of Rule 23(b)(3) have been met. Having found that Plaintiff has also met the requirements of Rule 23(a), I therefore certify the class, subject to the conditions concerning class representation for subclass (ii) as set forth in the Order attached hereto.[18]

---

**18.** In so deciding, I am cognizant of the increased burden placed on the parties to provide notice and "opt-out" opportunities to potential class members. Under Rule 23(c)(2), members of a class certified under Rule 23(b)(3) must be given the "best notice practicable including individual notice to all members who can be identified." Moreover unlike a Rule (b)(2) certification in which the Court determines who qualifies as members of the class and thus who benefits by any judgment in favor of the class, a judgment under Rule 23(b)(3) must include and specify those to whom the notice was provided and who did not request exclusion. Fed.R.Civ.P. 23(c)(3). Thus, the requirements under subdivision (b)(3) can be far more arduous than under (b)(2). However, since the potential class members can be readily identified inasmuch as they are all past or present employees of the same corporation, this requirement for notice may not be as arduous as it appears at first blush.